

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1768-13

### RYAN FRANCIS CHASE, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### BELL COUNTY

KELLER, P.J., delivered the opinion of the Court in which PRICE, WOMACK, KEASLER, HERVEY, COCHRAN and ALCALA, JJ., joined. MEYERS, J., filed a dissenting opinion. JOHNSON, J., concurred.

The issue before us is whether § 822.013(a) of the Health and Safety Code provides a defense

to criminal prosecution. We conclude that it does and affirm the judgment of the court of appeals.

### I. BACKGROUND

### A. The Incident

Viewing the evidence in the light most favorable to the submission of a defensive

instruction,[1] the following occurred: On September 2, 2009, appellant and his wife were walking their two dogs—a ten-year-old dog named Maka and a puppy—when two other dogs, Zeus and Rocky, escaped from a neighbor's backyard and attacked the group. Zeus, a pit bull, sank his fangs into Maka's neck and began shaking Maka like a rag doll. Appellant's wife picked up the puppy and ran from the scene. For about five minutes, appellant struggled to remove Zeus's jaws from Maka's neck. A neighbor from a different house (not the owner of the attacking dogs) intervened and helped separate Zeus and Maka. During this incident, Zeus bit both appellant and the intervening neighbor.

After Zeus and Maka were separated, appellant took Maka home. Appellant quickly returned to the scene with a rope, looped the rope around Zeus's neck or collar, and dragged the dog to appellant's house, which was two doors down. During this time, Zeus bit appellant again. When appellant arrived at his house, he secured the dog by tying the rope to the bumper of one of his cars. After securing the dog, appellant slashed the dog's throat with a knife. This injury resulted in the dog's death.

**B. Trial**

Appellant was charged with cruelty to non-livestock animals under Texas Penal Code § 42.092(b)(6).[2] During a pretrial hearing, defense counsel explained that the defense would seek to rely upon § 822.013 of the Health and Safety Code as authorizing appellant's conduct: "[W]e think that provision in the law provides a[n] absolute authorization under the facts of this case for the defendant to do what he did." Defense counsel claimed that it was this very law that allowed

[1] *See Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013) (appellate court must view evidence in light most favorable to requested defensive instruction).

[2] Appellant was charged by information with intentionally, knowingly, or recklessly causing bodily injury to a dog without the owner's effective consent. *See* TEX. PENAL CODE § 42.092(b)(6).

Governor Rick Perry to shoot a coyote that was attacking his dog. Counsel further explained that, under the statute, "a dog or coyote that is attacking or about to attack or has recently attacked livestock, domestic animals, which includes dogs . . . may be killed by a person either witnessing it or is involved in it." Defense counsel claimed that the statute "is a defense" and that whether it applied "is a matter of law" for the trial judge to decide. Granting the State's motion in limine, the trial judge restricted the parties from referring to the Health and Safety Code provision. In connection with its holding, the trial judge cited *Volosen v. State*.[3]

In a hearing outside the jury's presence during the middle of trial, defense counsel again raised the applicability of § 822.013 and asked the trial judge to reconsider his earlier ruling. Defense counsel pointed out that the version of the statute at issue in *Volosen* applied only to certain counties that had adopted it in a referendum but that the current version of the statute applied statewide. Defense counsel also pointed out that the statute's authorization to shoot an attacker dog was not limited to law-enforcement personnel. The trial judge denied defense counsel's request.

During his testimony at trial, appellant stated that, due to a previous incident in which his dog was attacked by another dog that the authorities did nothing about, appellant conducted some research. At that point, the State objected, and the trial judge held a conference outside the presence of the jury. Defense counsel reurged his disagreement with the judge's ruling on the applicability of § 822.013 and argued that appellant should be permitted to at least testify about "what in his mind, he felt he had legal authority to do." The trial judge ruled that appellant could testify "what, in his mind, he believed he was entitled to do" but could not use the word "law." Appellant was later asked, "You felt, under the circumstances, that your actions were justified?" Appellant responded,

---

[3] 227 S.W.3d 77 (Tex. Crim. App. 2007).

"Yes, based on what had happened and my research into the matter."

Finally, at the jury-charge conference, defense counsel requested the submission of a defensive instruction based on § 822.013:

> Judge, the defense would—based on the earlier issues that we've raised with the Court, would ask that the specific provisions contained in—in Section 822.013 of the Health and Safety Code, which we litigated earlier, be included in the Charge. That—the defense's position is that it's the real issue in this case. It goes to the heart of the defense. And we would respectfully ask that it be included as an appropriate charge.

The trial judge denied the request.[4]

The jury found appellant guilty. After a punishment hearing before the court, the trial judge assessed a sentence of one year in the county jail but suspended the imposition of that sentence and placed appellant on probation.[5]

## C. Appeal

On appeal, appellant complained that the trial judge erred in refusing to submit a defensive instruction based on § 822.013. The court of appeals agreed.[6] In response to the State's contention that appellant had failed to preserve error, the appellate court determined that appellant's request

---

[4] The jury charge required the jury to find that appellant killed the dog "without legal authority or the owner's effective consent." The phrase "without legal authority" is not contained in the version of the cruelty-to-animals statute that was in effect at the time of appellant's conduct (and currently in effect), though the phrase was contained in a prior version of the statute. *Compare* TEX. PENAL CODE §42.092(b)(6) (current) ("without the owner's effective consent") *with* TEX. PENAL CODE § 42.09(a)(9) (West 2006) ("without legal authority or the owner's effective consent"). In any event, the jury was never instructed that a statute conferred legal authority to kill a dog that had recently attacked a domestic animal.

[5] *See* TEX. PENAL CODE § 42.092(c) ("An offense under (b)(3), (4), (5), (6), or (9) is a class A misdemeanor.").

[6] *Chase v. State*, 418 S.W.3d 296 (Tex. App.–Austin 2013).

was specific enough to enable the trial judge to understand it.[7]  This was so because appellant had specifically referred to § 822.013 in his objection to the jury charge and because he had made extensive arguments about the applicability of the statute during previous hearings.[8]  The court also found that, contrary to the State's contention, preservation of appellant's complaint was governed by Article 36.14 rather than Article 36.15.[9]

On the merits, the court of appeals relied upon decisions by the Fort Worth Court of Appeals and this Court in *Volosen v. State.*[10]  The court below noted that the Fort Worth court had found that a person authorized to kill a dog under the predecessor to § 822.013 could not be guilty of an offense that proscribed the intentional or knowing killing of an animal owned by another.[11]  The court acknowledged that we reversed the Fort Worth Court of Appeals but pointed out that our holding was based on the fact that the predecessor statute did not apply statewide.[12]  "In fact," the court of appeals said, "the court of criminal appeals referred to the predecessor statute as a defense to a cruelty-to-animals charge."[13]

After finding preserved error in the jury charge, the court of appeals conducted a "some

---

[7]  *Id.* at 299-300.

[8]  *Id.*

[9]  *Id.* at 299 n.2.  *See* TEX. CODE CRIM. PROC. arts. 36.14, 36.15.

[10]  *Chase*, 418 S.W.3d at 300-01 (discussing *Volosen v. State*, 192 S.W.3d 597 (Tex. App.—Fort Worth 2006) and *Volosen*, 227 S.W.3d at 79, 82).

[11]  *Id.* at 300.

[12]  *Id.* at 300-01.

[13]  *Id.* at 300.

harm" analysis pursuant to *Almanza*[14] and found that appellant had been harmed.[15] As a result, the court of appeals reversed appellant's conviction and remanded the case for further proceedings.[16]

## II. ANALYSIS

### A. State's Grounds for Review

The State advances three grounds for review. With regard to the first ground,[17] the State contends that § 822.013 is only a civil provision and provides no defense to criminal liability. With regard to the second ground,[18] the State contends that § 1.03(b) of the Penal Code bars the use of a non-Penal-Code defense to a Penal-Code offense. With regard to the third ground,[19] the State contends that appellant failed to preserve error because he did not submit a proposed written instruction in compliance with Article 36.15. In support of its three grounds, the State makes numerous arguments, which we will address as the issues arise in the course of our analysis. We address the State's grounds in reverse order, which we perceive to be the logical progression of these

---

[14] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on State's motion for reh'g).

[15] *Chase*, 418 S.W.3d at 301-02.

[16] *Id.* at 302.

[17] "Does TEX. HEALTH & SAFETY CODE § 822.013(a)-(b), which authorizes an owner of a recently attacked dog to kill the attacker dog without the owner's effective consent and also bars liability for damages to the attacker-dog's owner, provide a defense to criminal liability?"

[18] "Assuming TEX. HEALTH & SAFETY CODE § 822.013(a) is construed as a defense to criminal liability, does TEX. PENAL CODE § 1.03(b), which permits the export of Penal Code general and affirmative defenses to extra-Penal Code offenses, contemporaneously bar the import of extra-Penal Code defenses to Penal Code offenses?"

[19] "Does a claimed TEX. HEALTH & SAFETY CODE § 822.013(a) defensive instruction qualify as a 'requested special charge' under TEX. CODE CRIM. PROC. art. 36.15 that must be made in writing to preserve error?"

issues. Thus, we will start with preservation, then address the general applicability of non-Penal-Code defenses to the Penal Code, and finally address whether § 822.013 provides a defense to criminal prosecution.

### B. Statutory Construction

Because all three of the State's grounds involve questions of statutory construction, we first summarize some general principles of construction. Appellate courts must construe a statute in accordance with the plain meaning of its text unless the language of the statute is ambiguous or the plain meaning would lead to absurd results that the legislature could not have possibly intended.[20] If the language of a statute is ambiguous, or the plain meaning leads to such absurd results, then a court may consult extratextual factors.[21] A statute is ambiguous when it is "reasonably susceptible to more than one understanding."[22] Extratextual factors include but are not limited to: (1) the object sought to be attained, (2) the circumstances under which the statute was enacted, (3) the legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) the consequences of a particular construction, (6) administrative construction of the statute, and (7) the title (caption), preamble, and emergency provision.[23] With these principles of

---

[20] *Price v. State*, 434 S.W.3d 601, 605 (Tex. Crim. App. 2014); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[21] *Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2013); *Boykin*, 818 S.W.2d at 785.

[22] *Baird v. State*, 398 S.W.3d 220, 229 (Tex. Crim. App. 2013). *See also Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012).

[23] *Ex parte Rieck*, 144 S.W.3d 510, 512 (Tex. Crim. App. 2004); TEX. GOV'T CODE § 311.023.

construction in mind, we turn to the State's grounds for review.[24]

## C. Preservation

The record shows that defense counsel pointed out the statutory provision upon which he relied, explained the substance of that provision, contended that the provision was a defense, and asked for a jury instruction based on that provision. These actions would seem to satisfy the basic principle of error preservation that a party is required to "let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."[25] Finding that appellant's objection was sufficient because the record showed that the trial judge understood appellant's request to encompass the matters about which he now complains, the court of appeals held that appellant preserved error by objection in accordance with Article 36.14.[26]

The State contends, however, that Article 36.14 was inapplicable because the non-Penal-Code defensive issue appellant was seeking was a "requested special charge" that required the submission of a proposed instruction in accordance with Article 36.15. "Contrary to the court of appeals's determination," the State claims, "the controlling statute is not dictated by the manner in which the appellant challenged the charge. The critical component is the substance of the requested

---

[24] We will later address some other, specific principles of statutory construction in connection with some of the specific arguments advanced by the State.

[25] *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

[26] *Chase*, 418 S.W.3d at 299-300.

instruction, and that is what controls which statute applies and thus preservation requirements."[27]
The State cites no authority for its contention that the substance of the instruction controls the method by which the defendant must preserve error, and we are aware of none. In fact, the language of the statutes and the caselaw are to the contrary.

Articles 36.14 and 36.15 provide different methods for preserving error in the jury charge. Under Article 36.14, the defendant must "present his objections . . . in writing, distinctly specifying each ground of objection."[28] Under Article 36.15, the defendant must "present written instructions and ask that they be given to the jury."[29] Although both statutes require that the defendant's communication be in writing, the statutes now provide that the writing requirement is satisfied if the objection or requested instruction is "dictated to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury."[30]

---

[27] In *Posey v. State*, we held that a defensive issue does not become law applicable to the case if it is neither requested nor submitted. 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). As a result, a defendant who fails to request a defensive issue forfeits the issue entirely and is not entitled to an egregious harm analysis under *Almanza*, which usually applies to unobjected to errors in the jury charge. *Posey*, 966 S.W.2d at 60-61. This holding is based in part on the idea that the decision to request a defensive issue is a matter of trial strategy. *Delgado v. State*, 235 S.W.3d 244, 249-50 (Tex. Crim. App. 2007). We have declined to apply the holding in *Posey* in at least one situation in which the trial-strategy rationale would not apply—when the trial court submits the defensive issue in the jury charge on its own but the defensive instruction contains errors. *Vega v. State*, 394 S.W.3d 514, 519-20 (Tex. Crim. App. 2013). Even if the State were correct that appellant failed to properly preserve error, it would at least be arguable that his explicit request for a § 822.013 instruction would negate the application of *Posey*'s trial-strategy rationale and entitle appellant to an analysis for egregious harm under *Almanza*. Due to our resolution of the State's claim, we need not resolve this hypothetical issue.

[28] TEX. CODE CRIM. PROC. art. 36.14.

[29] *Id.* art. 36.15.

[30] *Id.* arts. 36.14, 36.15.

The language in Article 36.14 broadly provides that a specific objection will preserve error with respect to any sort of error or omission in the charge:

> Said objections may embody errors claimed to have been committed in the charge, as well as errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts, and in no event shall it be necessary for the defendant or his counsel to present special requested charges to preserve or maintain any error assigned to the charge, as herein provided.[31]

Similarly, Article 36.15 broadly provides that error may be preserved with respect to errors and omissions by submitting a proposed instruction:

> The defendant may, by a special requested instruction, call the trial court's attention to error in the charge, as well as omissions therefrom, and no other exception or objection to the court's charge shall be necessary to preserve any error reflected by any special requested instruction which the trial court refuses.[32]

Our caselaw has indicated that error in the jury charge may be preserved by objection or by submitting a proposed instruction.[33] Even absent the caselaw, however, the language of both

---

[31] *Id.* art. 36.14.

[32] *Id.* art. 36.15.

[33] *Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013) ("if the charge contains error and that error has been properly preserved by an objection or request for instruction . . . ."); *Peterson v. State*, 508 S.W.2d 844, 848 (Tex. Crim. App. 1974) ("This court has consistently held that an appellant's contentions are not before this court for consideration where neither written objection to the court's charge nor a written request for the charge desired was filed with the trial court."); *Dominguez v. State*, 459 S.W.2d 628, 631 (Tex. Crim. App. 1970) ("In the absence of an objection or special requested charge in writing and timely filed as required by Articles 36.14 and 36.15, V.A.C.C.P., nothing pertaining to the court's charge is presented for review."). In citing *Peterson* and *Dominguez*, we recognize that the cases made pronouncements that have been overruled or superseded. The holding in these cases that error is forfeited entirely unless preserved under one of the statutes has been overruled by *Almanza*, which applies an egregious-harm analysis to unpreserved error that does not involve a defensive issue. *See Almanza,* 686 S.W.2d at 171-72. *Peterson* and *Dominguez* also held that dictation to the court reporter did not preserve error, *see Peterson* and *Dominguez, supra*, and that holding has been superseded by statute. Nevertheless, these cases evince a recognition by this Court that Articles 36.14 and 36.15 simply provide for different methods of preserving jury-charge error.

statutory provisions is unambiguous. Defense counsel has the option to use either method of error preservation. We reject the State's contention that appellant was limited to preserving error under Article 36.15.

### D. § 1.03(b) and non-Penal Code Defenses

We now turn to the State's contention that Health and Safety Code § 822.013 does not apply here because Penal Code § 1.03(b) generally bars the application of defenses outside the Penal Code to Penal Code offenses. Penal Code § 1.03(b) provides:

> The provisions of Titles 1, 2, and 3 apply to offenses defined by other laws, unless the statute defining the offense provides otherwise; however, the punishment affixed to an offense defined outside this code shall be applicable unless the punishment is classified in accordance with this code.[34]

The most obvious effect of this provision is that, unless otherwise provided by statute, provisions contained within Titles 1, 2, and 3 of the Penal Code apply to offenses contained in statutes that are outside the Penal Code.[35]

In several of our decisions, we have drawn a negative implication from this express directive that provisions contained within Titles 1 through 3 apply to offenses that are outside the Penal Code: We held that provisions contained in other titles of the Penal Code did *not* apply to offenses that are

---

[34] TEX. PENAL CODE § 1.03(b).

[35] *See Ex parte Thompson*, 442 S.W.3d 325, 340 & n.79 (Tex. Crim. App. 2014) ("This definition is contained in an introductory definition section of the Texas Penal Code that applies throughout the Code and even to offenses contained in statutes outside the Code unless otherwise excepted."); *Aguirre v. State*, 22 S.W.3d 463, 470 (Tex. Crim. App. 1999) ("Section 6.02, which is in Title 2 of the Penal Code, is made applicable to municipal ordinances by Section 1.03(b): 'The provisions of Titles 1, 2, and 3 apply to offenses defined by other laws, unless the statute defining the offense provides otherwise.'").

outside the Penal Code.[36] As a consequence, we have held that inchoate offenses such as attempt and conspiracy, found in Title 4 of the Penal Code, do not apply to offenses outside the Penal Code unless otherwise provided by statute.[37]  This construction of § 1.03(b) by negative implication has existed for over thirty years and has been implicitly ratified by numerous subsequent legislative enactments.[38]

The State, however, wishes to draw a broader negative implication, to say that there can be no interplay between a Penal Code provision that appears in Titles 4 through 11 and *any* statute outside the Penal Code absent express statutory direction.  The State bases its interpretation in part upon a statement made in *State v. Colyandro* that § 1.03(b) "contemporaneously bars the import of extra-Penal Code offenses to offenses defined in Titles 4 through 11 of the Penal Code."[39] *Colyandro* refers only to barring the importation of extra-Penal-Code "offenses," but, relying upon a concurrence in *Celis v. State*,[40] the State contends, "Defenses should be treated the same way unless otherwise specified."  The State concludes that no provision outside the Penal Code should ever be imported into the Penal Code, absent express direction, because "Section 1.03(b) contemplates export only and thus excludes the converse."

What the State now seeks is to draw the broadest possible negative implication from the

---

[36]  *State v. Colyandro*, 233 S.W.3d 870 (Tex. Crim. App. 2007); *Baker v. State*, 547 S.W.2d 627 (Tex. Crim. App. 1977); *Moore v. State* , 545 S.W.2d 140 (Tex. Crim. App. 1976).

[37]  *Colyandro*, 233 S.W.3d at 874-75.

[38]  *Id.* at 878-84.

[39]  *Id.* at 874.

[40]  416 S.W.3d 419, 437 (Tex. Crim. App. 2013) (Keller, P.J., concurring) (observing that the Penal Code's Chapter 8 defenses applied to extra-Penal-Code offenses).

language of § 1.03(b), but courts have held that the negative-implication canon of construction should be employed with great caution.[41] "The force of any negative implication . . . depends on context."[42] The canon does not apply "unless it is fair to suppose that [the legislature] considered the unnamed possibility and meant to say no to it."[43]

The State's novel construction stretches the negative-implication canon too far. To the extent that § 1.03(b) refers to laws outside the Penal Code, it refers only to laws that define "offenses." The point of § 1.03(b) was to specify when a Penal Code provision would apply to an offense not contained in the Penal Code,[44] not to specify how other laws outside the Penal Code, such as those creating defenses, would apply to Penal Code offenses.[45] Under § 1.03(b)'s language, some Penal

---

[41] *Ford v. United States*, 273 U.S. 593, 611-12 (1927) (quoting Broom's Legal Maxims, 7th Ed., 653, as saying that "great caution" should be exercised in employing the canon and quoting Lord Justice Lopes in *Colquhoun v. Brooks*, 21 Q.B.D. 52, 65, that the canon is "often a valuable servant, but a dangerous master to follow in the construction of statutes"); *United States v. Porter*, 745 F.3d 1035, 1046 (10th Cir. 2014) (quoting Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012): "Virtually all the authorities who discuss the negative-implication cannon emphasize that it must be applied with great caution, since its application depends so much on context."); *Christianson v. Henke*, 831 N.W.2d 532, 535 (Minn. 2013) (same).

[42] *Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013). *See also Porter*, 745 F.3d at 1046; *Christianson*, 831 N.W.2d at 535.

[43] *Marx*, 133 S. Ct. at 1175 (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)).

[44] At least one court of appeals has held that the reasoning in *Colyandro* does not bar the use of a non-Penal-Code offense as an underlying felony in the Penal-Code offense of felony murder. *Christian v. State*, 286 S.W.3d 63, 67-69 (Tex. App.–Texarkana 2009, pet. ref'd). We express no comment on that issue.

[45] For this reason, the State's reliance on the *Celis* concurrence is misplaced. The concurrence merely pointed out that the Penal Code defense at issue was contained within the set of laws that apply to non-Penal-Code offenses.

Code provisions apply to offenses outside the Penal Code, and by negative implication, other Penal Code provisions do not. That is as far as the negative-implication canon can take us. Extending § 1.03(b)'s language to laws outside the Penal Code that do not define offenses results in a construction that is beyond what we can fairly suppose the legislature intended. We reject the State's contention that § 1.03(b) bars the application of a non-Penal-Code defense to a Penal Code offense.

### E. § 822.013

### 1. *Volosen*

We now turn to the State's first ground for review, regarding whether § 822.013 codifies a defense to criminal prosecution. The State first contends that the court of appeals erred to rely upon our decision in *Volosen* because this Court did not actually resolve whether the relevant statute created a defense. We agree. The defendant in *Volosen* claimed to have acted pursuant to legal authority provided by former § 822.033, a predecessor to § 822.013.[46] By virtue of its placement in Subchapter C of Chapter 822, former § 822.033 was a statute of limited applicability, applying only to counties that had adopted Subchapter C.[47] The main issue before us in *Volosen* was whether § 822.033 was shown to apply in the county in which the defendant's conduct occurred.[48] Although our decision once referred to "the defense found in § 822.033,"[49] that statement was not a holding,[50]

---

[46] *Volosen*, 227 S.W.3d at 79.

[47] *Id.* at 80-81.

[48] *Id.* at 81-82.

[49] *Id.* at 80.

[50] *See Ford v. State*, 334 S.W.3d 230, 233-34 (Tex. Crim. App. 2011) (observing that our statement in *Young v. State*, 14 S.W.3d 748, 751-52 (Tex. Crim. App. 2000), that a certain provision increased the offense level was *dicta* that was made in passing and was not an issue upon which we

and in the context of the rest of our opinion, was merely an assumption for the sake of argument.[51]

We turn, then, to address the issue before us as one of first impression, to be analyzed under the usual rules of statutory construction.

## 2. *Text of § 822.013*

We must first ascertain whether the proper construction of § 822.013 can be determined from its text. Appellant relies upon subsection (a), which provides:

> A dog or coyote that is attacking, is about to attack, or has recently attacked livestock, domestic animals, or fowls may be killed by**:**
>
> (1) any person witnessing the attack; or
>
> (2) the attacked animal's owner or a person acting on behalf of the owner if the owner or person has knowledge of the attack.[52]

On its face, this provision appears to confer legal justification to kill a dog under certain circumstances. Legal justification is generally considered to be a defense in criminal cases.[53] And

---

granted review or decided in that case).

[51] *See Volosen*, 227 S.W.3d at 80 ("the statutory provision upon which appellant relies to establish a defense"), 82 ("Appellant wishes to rely upon an entirely different statute to supply legal authority for his conduct. In doing so, he has essentially invoked a defense, upon which he has the burden of production.") ("Because § 822.033 was contained within a subchapter of limited applicability, a defense based upon that provision necessarily includes as one of its elements the statute's applicability.") ("Under the circumstances, we find that appellant has failed to meet his burden of production to show the applicability of his claimed defense.").

[52] TEX. HEALTH & SAFETY CODE § 822.013(a).

[53] *See* 21 AM. JUR. 2d *Criminal Law* § 415 (2d ed. 1998) ("If, on any reasonable view of the evidence, a jury might find that a defendant's actions were justified, the failure to charge the justification defense is a reversible error."); John Kaplan & Robert Weisberg, CRIMINAL LAW: CASES AND MATERIALS 751 (1986) ("The defenses of justification and excuse cut across the entire criminal law . . . . An actor can claim justification when, in causing the harm, she has nevertheless advanced some social interest, so that we do not want the criminal law to discourage her action."); TEX. PENAL CODE § 9.02 ("It is a defense to prosecution that the conduct in question is justified under this

even when a statute does not explicitly label justifying conduct as a defense, it may nevertheless be treated as such.[54]

The State argues, however, that subsection (a) must be read in conjunction with subsection (b), which provides:

> A person who kills a dog or coyote as provided by this section is not liable for damages to the owner, keeper, or person in control of the dog or coyote.[55]

The State contends that subsection (b) "limits subsection (a)'s application to civil cases." The State points out that subsection (b) refers to "damages" and that "damages" is purely a civil term. The State also contends that the phrase "as provided by this section" specifically circumscribes the applicability of subsection (a) to the civil remedy outlined in subsection (b).

We are not convinced that the language relied upon by the State shows unambiguously that § 822.013 is solely a civil statute. Essentially, subsections (a) and (b), when taken together, say: (1) a defendant may kill a dog under certain circumstances, and (2) if he kills the dog in accordance with (1), then he is not liable for civil damages. There are clearer ways to draft a statute that imposes only a civil remedy than the two-pronged method that § 822.013 employs. The legislature could have used a single-pronged approach that simply immunizes certain conduct from civil liability, e.g. by saying "a person is not liable in civil damages if he kills a dog" under certain circumstances.[56] Or

---

chapter.").

[54] TEX. PENAL CODE § 2.03(e) ("A ground of defense in a penal law that is not plainly labeled in accordance with this chapter has the procedural and evidentiary consequences of a defense.").

[55] TEX. HEALTH & SAFETY CODE § 822.013(b).

[56] *See*, for example, TEX. EDUC. CODE § 37.016 ("A teacher, school administrator, or school employee is not liable in civil damages for reporting" a student engaging in certain activities relating

the legislature could have included a provision in the statute specifying that the statute does *not* create a defense to criminal prosecution. Such a provision would ensure that a defense for civil actions would have no spillover consequences for criminal prosecutions. An example of an anti-spillover provision (but in reverse) can be found in the statute under which appellant was prosecuted. Under § 42.092, injuring a domestic animal under certain circumstances is a crime, but the statute explicitly provides, "This section does not create a civil cause of action for damages or enforcement of the section."[57]

The State argues that, if § 822.013 were meant to be a defense to both criminal and civil liability, there would be no need to specify an exemption for civil liability. But a statute that provides an exemption from criminal liability will not always or automatically provide an exemption from civil damages, even when the criminal defense is one of justification.[58] In *Howsley v. Gilliam*, the Texas Supreme Court declined to apply a justifiable homicide provision found in the old Penal Code as a defense to a civil action for wrongful death.[59] If the legislature perceived that subsection (a) of § 822.013 was, by itself, a defense to criminal liability, it could have felt compelled to add subsection (b) to ensure that it was defense to civil liability as well. Moreover, even when conduct is justified in the abstract, civil law may sometimes still require the payment of actual damages to

---

to the consumption of alcohol or controlled substances.).

[57] TEX. PENAL CODE § 42.092(g).

[58] *Howsley v. Gilliam*, 517 S.W.2d 531, 532 (Tex. 1975) ("The issue presented to this court is whether Article 1222 provides, in a civil case, exoneration as a matter of law for a killing which we assume would otherwise be actionable. We hold it does not. It is well established that the mere fact the Legislature adopts a criminal statute does not mean this court must accept it as a standard for civil liability.").

[59] *Id.*

a party who was harmed.[60] So, even if subsection (a) justified the conduct of the person who killed

the dog for both criminal and civil purposes, a provision might still be necessary to shield the person

from civil damages for the owner's loss of the dog.

The State also contends that subsection (c) of § 822.013 is a civil provision and that the civil

character of this subsection is some evidence that the entire statute is civil in nature. Subsection (c)

provides:

> A person who discovers on the person's property a dog or coyote known or suspected
> of having killed livestock, domestic animals, or fowls may detain or impound the dog
> or coyote and return it to its owner or deliver the dog or coyote to the local animal
> control authority. The owner of the dog or coyote is liable for all costs incurred in
> the capture and care of the dog or coyote and all damage done by the dog or coyote.[61]

The State claims that this provision is civil because the second sentence "explains the parameters

for civil damages." Even if subsection (c) is a civil provision, however, that is not necessarily

inconsistent with the notion that § 822.013 contains both civil and criminal provisions.

Moreover, subsection (e) of § 822.013 appears to provide a defense to at least one criminal

offense—the crime of hunting without a license. Subsection (e) provides:

> A person is not required to acquire a hunting license under Section 42.002, Parks and

---

[60] *See* RESTATEMENT (SECOND) TORTS § 263 (describing private necessity privilege for a trespass to a chattel that allows an actor to exercise control over personal property in an emergency situation so that there is no trespass or conversion but still makes the actor liable for any harm that is caused); *id.,* Reporter's Notes (acknowledging that there is "scarcely any authority to support the principle stated in this Section, and it must rest largely upon the analogy to the corresponding privilege to interfere with the exclusive possession of land"); *Protectus Alpha Navigation Co. v. North Pacific Grain Growers*, 585 F. Supp. 1062, 1067 (D. Oregon 1984), *aff'd*, 767 F.2d 1379 (9th Cir. 1985) (discussing doctrine of private necessity and citing § 263). *See also* W. Page Keeton, PROSSER & KEETON ON TORTS § 24, p. 147-48 (5th ed. 1984) (Hornbook Series, student ed.) (discussing privilege of private necessity with respect to entry upon land and describing it as a "partial and incomplete privilege, which does not extend to the infliction of any substantial harm").

[61] TEX. HEALTH & SAFETY CODE § 822.013(c).

Wildlife Code, to kill a dog or coyote under this section.[62]

Parks and Wildlife Code § 42.002 provides that, with certain exceptions not relevant here, "no resident may hunt any bird or animal in this state without having acquired a hunting license."[63] A violation of the hunting-license provision is a Class C Parks and Wildlife Code Misdemeanor.[64]

The hunting-license exemption in subsection (e) suggests a legislative intent to leave no stone unturned in authorizing a person to kill a dangerous dog.[65] Absent this provision, one could perhaps imagine a court saying that § 822.013(a)'s authorization to kill a dangerous dog would overcome flat prohibitions against killing a dog owned by another but would not exempt one from licensing requirements. "You can kill your neighbor's vicious dog," a court might say, "but you still must obtain a license."

Of course, the legislature could have explicitly labeled the conduct permitted in § 822.013 as a "defense to criminal prosecution" based on the killing of a dog, and it did not. The language of the statute is simply ambiguous regarding whether it creates a general defense to criminal liability.

### 3. *Chapter 822*

We next ask whether the broader context of Chapter 822 clarifies the meaning of § 822.013 with respect to its application to criminal cases. Chapter 822 is part of the Health and Safety Code.

---

[62] *Id.* § 822.013(e).

[63] PARKS & WILD. CODE § 42.002(a).

[64] *Id.* § 42.025.

[65] That killing a dog under § 822.013 might qualify as a form of hunting suggests the possibility that a person who does so could avail himself of the hunting exception to the cruelty-to-non-livestock-animals statute. *See* TEX. PENAL CODE § 42.092(f)(1)(A). Neither appellant nor the court of appeals has advanced such a contention, however, and we do not address the issue.

The Health and Safety Code contains numerous criminal provisions, such as those in the Controlled Substances Act,[66] so placement of a provision in that code is not evidence that the provision is solely civil in character. Moreover, Chapter 822 contains criminal offenses.[67] In fact, Subchapter B of Chapter 822 contains exactly three statutes: one that defines terms (§ 822.011), one that makes it a crime to allow a dog or coyote that is dangerous to domestic animals to run at large (§ 822.012), and the statute at issue in the present case (§ 822.013).[68]

The State contends that § 822.012 "is directed at the owner [of the dog] and has nothing to do with the subject of killing a dog under the circumstances described in" § 822.013. It is true that § 822.013 does not provide a defense to the offense proscribed by § 822.012, but it is an overstatement to say that the statutes have nothing to do with each other. Both statutes are concerned with protecting domestic animals from dangerous dogs (and coyotes). One statute (§ 822.012) serves this goal by making it a crime for the owner (or person otherwise responsible for the dog) to allow his dangerous dog to run at large.[69] The other statute (§ 822.013) serves this goal by allowing certain other people to kill the dangerous dog.

The State points out that there are no offenses in the Health and Safety Code to which § 822.013 would be a defense. The State claims then that it would be nonsensical to interpret §

---

[66] *See* TEX. HEALTH & SAFETY CODE § 481.001, *et seq.*

[67] *See id.* §§ 822.005, 822.012.

[68] *See id.*, Chapter 822, Subchapter B.

[69] *See id.*, § 822.012(a) ("The owner, keeper, or person in control of a dog or coyote that the owner, keeper, or person knows is accustomed to run, worry, or kill livestock, domestic animals, or fowls may not permit the dog or coyote to run at large."), (b) ("A person who violates this section commits an offense. An offense under this subsection is punishable by a fine of not more than $100.").

822.013 as a criminal defense "when it has no applicability as a criminal defense to offenses contained within the same title, chapter, or subchapter."[70] We disagree. The various provisions in Chapter 822 are concerned with protecting against dangerous animals,[71] and Subchapter B in particular is concerned with protecting domestic animals from dangerous dogs and coyotes. The cruelty-to-non-livestock-animals statute, on the other hand, has the different purpose of protecting domestic animals from humans. It is not irrational for the legislature to group statutes that have the same purpose together, even though that means one of those statutes provides a defense to a statute that serves a different purpose in a different code. In any event, § 822.013 necessarily provides a defense to at least one offense outside the Health and Safety Code—the offense of hunting without a license, codified in the Parks and Wildlife Code.

### 4. *Text of § 42.092*

The State contends that the plain text of Penal Code § 42.092 (upon which appellant's prosecution was based) supports the conclusion that § 822.013 is not a criminal defense. The State points out that § 42.092 lists several exceptions and defenses but contains no reference to § 822.013. The implication seems to be that, if the legislature had wanted § 822.013 to be a defense, it would have included it with other defenses in § 42.092. The State also points out that § 42.092(e)(1) provides a defense that is similar but not identical to § 822.013. Citing *Lothrop v. State*,[72] the State argues that there is a presumption that the legislature does not intend to create redundancies, and the

---

[70] We suspect that, if § 822.013 were a defense to a provision in the Health and Safety Code, the State would argue that its defensive function has been fulfilled and that it would not, therefore, apply to offenses in the Penal Code.

[71] *See id.*, Chapter 822, *passim.*

[72] 372 S.W.3d 187, 190-91 (Tex. Crim. App. 2012).

State contends that making § 822.013 a defense to criminal prosecution would render § 42.092(e)(1) meaningless.

One problem with these arguments is that they are offense-specific. The State's overarching claim is that § 822.013 is a purely civil statute, providing no defense to *any* criminal offense.[73] That one particular statute defining a criminal offense may be worded in a particular manner (listing multiple defenses or containing a redundant defense) is not significantly probative of whether § 822.013 is a purely civil statute unless the offense in question is the *only* offense to which § 822.013 could conceivably be a defense to. It is not. Killing or causing injury to a dog without the effective consent of the owner could be an offense under § 42.092, the cruelty-to-non-livestock-animals statute, but such conduct could also be an offense under § 28.03, the criminal-mischief statute.

Under Penal Code § 28.03, a person commits an offense if, "without the effective consent of the owner . . . he intentionally or knowingly damages or destroys the tangible property of the owner."[74] An animal that is owned qualifies as tangible property under the criminal-mischief statute.[75] The criminal-mischief statute contains no defenses at all, much less a counterpart to the defense found in § 42.092(e)(1).[76] So, despite the presence of defenses in § 42.092 and even if the State were correct that § 822.013 is largely redundant of § 42.092(e)(1), that would not necessarily

---

[73] We set aside for the moment that the State's contention is at least trivially incorrect because of the Subsection (e) exemption from the hunting-license requirement.

[74] TEX. PENAL CODE § 28.03(a)(1).

[75] *State v. Bartee*, 894 S.W.2d 34, 41, 43-44, 46 (Tex. App.–San Antonio 1994, no pet.) (unanimous panel op. by John F. Onion, Jr.) (even a wild animal can qualify as property under the criminal-mischief statute when made subject to a person's dominion).

[76] *See* TEX. PENAL CODE § 28.03, *passim*.

mean that § 822.013 is solely a civil provision because there is at least one other criminal statute, § 28.03 (criminal mischief), to which § 822.013 might provide a defense.

But even if we were to disregard the criminal-mischief statute, and focus solely on § 42.092, the language of that statute does not preclude the application of § 822.013 as a defense. The fact that § 42.092 contains a list of exceptions and defenses does not mean that the list is an exclusive one. That the list is not exclusive can be seen by the fact that the statute omits what is perhaps the most obvious situation in which killing an animal would be justifiable—when the actor's life is in danger. § 42.092 contains a defense for an actor who has a reasonable fear of bodily injury from a "dangerous wild animal" such as a lion or a tiger,[77] but there is no provision in that statute that would allow a person who reasonably believes that his life is in danger to defend himself against an attacking dog. Nevertheless, the defense of necessity, at least, would apply.[78]

Moreover, while the defense contained in § 42.092(e)(1) is in some ways similar to § 822.013(a), these provisions are not entirely redundant and can be reconciled to give meaning to each as a defense to prosecution. § 42.092(e)(1) provides:

> It is a defense to prosecution under Subsection (b)(2) or (b)(6) that . . . the animal was discovered on the person's property in the act of or after injuring or killing the person's livestock animals or damaging the person's crops and that the person killed or injured the animal at the time of this discovery.[79]

---

[77] *See* TEX. PENAL CODE § 42.092(d)(1); TEX. HEALTH & SAFETY CODE § 822.101.

[78] *See* TEX. PENAL CODE § 9.22 ("Conduct is justified if: (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.").

[79] *Id.* § 42.092(e)(1).

The defense codified by this provision is more restrictive than § 822.013 in that: (1) the attacking animal must be on the actor's property at the time it engages in the dangerous conduct, and (2) the attacking animal's dangerous conduct must be directed at livestock animals rather than at domestic animals in general. On the other hand, § 42.092(e)(1) is more expansive than § 822.013 in that: (1) the attacking animal can be a danger to the actor's crops and not just his animals, and (2) the attacking animal does not have to be a dog or coyote.

The defense in § 42.092 seems aimed at protecting the instruments of a farmer or rancher's livelihood on his own property. Crops and livestock, which are generally endangered by animals only on the actor's property, are covered here. On the other hand, § 822.013 seems at least partly concerned with protecting domestic animals, such as dogs and cats, that are more mobile and can easily be endangered off the actor's property. Also, the focus of § 822.013 on dogs and coyotes as attacker animals may indicate a legislative concern that these types of animals pose a broader threat to an actor's domestic animals than other types of animals.

In any event, construing § 822.013 as providing a defense would not render § 42.092(e)(1) meaningless. A defendant could invoke § 822.013 only if the animal he killed was a dog or coyote and only if the dog or coyote endangered another (domestic) animal. If the attacking animal was not a dog or coyote, or endangered only the actor's crops, then the actor would need to rely upon § 42.092(e)(1) to provide a defense.

As an aside, the State also contends that construing § 822.013 as providing a defense would eliminate the need for § 42.092(e)(2). Under that latter provision,

> It is a defense to prosecution under Subsection (b)(2) or (6) that . . . the person killed or injured the animal within the scope of the person's employment as a public servant or in furtherance of activities or operations associated with electricity transmission or distribution, electricity generation or operations associated with the generation of

electricity, or natural gas delivery.[80]

It is difficult to see how this provision relating to public servants and electricity operators has much to do with § 822.013. Neither of the protected actors in Subsection (e)(2) are required to meet any of the elements in § 822.013. They do not have to show that the animal that was killed was a dog or coyote, that it had attacked another animal, that the attack was recent, or that they witnessed the attack. It may be that the reasons a public servant will have to kill an animal in the course of his duties will sometimes be similar to what § 822.013 authorizes for any individual, but that possible convergence of circumstances is not persuasive evidence that § 822.013 was not intended to be a defense to criminal prosecution.[81]

For all of the reasons we have discussed, we conclude that the various statutes at issue are ambiguous with respect to whether § 822.013 provides a general defense to criminal prosecution. The focus of the State's argument has been on its claim that § 822.013 is solely a civil statute, but to the extent that the State's argument can be taken as a claim that the language of § 42.092 specifically excludes the application of § 822.013 as a defense to the offense of cruelty to non-livestock animals, much of our discussion above answers that claim as well. To those answers we would add one more: If we assume that § 822.013 is at least partly a criminal statute that provides

_____

[80] *Id.* § 42.092(e)(2).

[81] Neither party points to TEX. PENAL CODE § 9.21, which provides a more generalized "public duty" defense to crimes. That statute provides a defense if, *inter alia*, "the actor reasonably believes the conduct is required or authorized by law." *Id.* § 9.21(a). We do not decide whether a defense could be advanced pursuant to § 9.21 on the basis of authority conferred by § 822.013, much less whether appellant could have availed himself of such a defense in this case. We decide only that § 9.21 does not change our conclusion that the text of various statutory provisions is ambiguous with respect to whether § 822.013(a) provides, in general, a defense to criminal prosecution, and in particular, a defense to a cruelty-to-non-livestock-animals prosecution.

a defense to some criminal prosecutions, the legislature could have made clear that § 822.013 was not a defense to a prosecution for cruelty to non-livestock animals, if that was its intent, by including a provision that explicitly excludes the application of § 822.013, or of matters described in that section, as a defense.[82]

## 5. *History of § 822.013*

Up to this point, we have considered every factor that might conceivably have a bearing on whether the language of § 822.013 is plain, and we have determined that the provision is ambiguous with respect to whether it creates a defense to criminal liability in general and to the cruelty-to-non-livestock-animals offense in particular.[83] Some of the factors considered above may well be relevant as part of an examination of extratextual factors in construing the meaning of an ambiguous statute. But, for reasons that become clear below, the factors heretofore discussed carry little weight in an extratextual analysis of this particular statute.

To understand the statute before us, we must look to its beginning. The first version of this statute was a Penal Code provision, added in 1937 as part of the newly enacted Article 1371a.[84] Along with the statutory schemes associated with other predecessors to § 822.013, Article 1371a was

---

[82] *See*, e.g., TEX. PENAL CODE §§ 46.03 ("It is not a defense to prosecution under this section that the actor possessed a handgun and was licensed to carry a concealed handgun under Subchapter H, Chapter 411, Government Code."), 49.10 ("In a prosecution under Section 49.03, 49.04, 49.045, 49.05, 49.06, 49.065, 49.07, or 49.08, the fact that the defendant is or has been entitled to use the alcohol, controlled substance, drug, dangerous drug, or other substance is not a defense.").

[83] We do not decide whether all of the factors considered are an appropriate part of a plain-meaning analysis. Assuming, merely for the sake of argument, the relevance of every factor relied upon by the State that might conceivably affect a plain-meaning analysis, we find those factors inconclusive.

[84] TEX. PENAL CODE art. 1371a, § 3 (Vernon's 1948); Acts 1937, 45th Leg., ch. 450, p. 1119.

a local-option statute, applicable to a particular county only if adopted in an election by the voters of that county.[85]

> The part of Article 1371a that was the predecessor to the current statute provided:
>
> Any dog, whether registered and tagged or not, when found attacking any sheep, goats, calves, and/or other domestic animals or fowls, or which has recently made, or is about to make such attack on any sheep, goats, calves, and/or other domestic animals and fowls, may be killed by anyone present and witnessing or having knowledge of such attack *and* without liability in damage to the owner of such dog.[86]

The fact that the statute appeared in the Penal Code is a strong indication that it was intended to be a criminal provision.[87] The use of the word "and" between the part of the statute that authorizes the killing of a dog and the part that immunizes the actor from civil liability indicates that the legislature intended to provide a defense to both criminal and civil liability—the obvious reading of the statutory language being that the language authorizing the killing of a dog was intended to create a defense to criminal liability and the conjunctive phrase "and without liability in damage to the owner of the dog" was meant to ensure that the provision was *also* a defense to civil liability.[88] We also

---

[85] TEX. PENAL CODE art. 1371a, § 6 (Vernon's 1948). *See also* Tex. Rev. Civ. Stat. 192-3, § 6 (West 1974); *Volosen*, 277 S.W.3d at 80 (quoting TEX. HEALTH & SAFETY CODE § 822.021).

[86] TEX. PENAL CODE art. 1371a, § 3 (Vernon's 1948) (emphasis added).

[87] *See Johnson v. Tenth Judicial District Court of Appeals*, 280 S.W.3d 866, 869 (Tex. Crim. App. 2008) (observing that, unlike the Penal Code and the Code of Criminal Procedure, a provision of the Government Code is not "on its face" a criminal-law statute).

[88] Contained within the same paragraph was an authorization for certain public officials or law-enforcement officers to kill a "dog known to have attacked, killed, or injured any sheep, goat, calf, or other domestic animal or fowl" if the owner of the dog fails to do so. TEX. PENAL CODE art. 1371a, § 3 (Vernon's 1948). This portion of the statute likewise appears to have been a defense to criminal liability. The statutory paragraph also contained a predecessor to § 822.013(c), authorizing the detention or impounding "by any person" of a dog that has attacked domestic animals. Art. 1371a, § 3.

observe that Article 1371a was located within the same chapter as the offenses that then proscribed the killing of animals.[89] For counties that adopted it, Article 1371a appears, by its language, to have provided a defense to then-existing offenses involving the killing of animals, as well as to other offenses that might arise from the killing of a dog.

However, the State contends that it would be absurd to conclude that a statute that applied only to certain localities would provide a criminal defense to statutes of general applicability. The State further argues that varying the applicability of a defense from one locality to another would create equal protection problems. We disagree. There is nothing absurd or unconstitutional about the idea that conduct may be a crime in one county but not in another, nor is it absurd or untoward for a state to use a local-option statute to allow a county to permit certain conduct that would otherwise be prohibited. A common example of a variance created by local option law is the existence of "wet" and "dry" counties or cities in this state—which differ with regard to the sale of alcoholic beverages.[90] The Supreme Court has upheld the power of a state to pass a local-option law regarding the sale of alcoholic beverages that makes conduct a crime, or exempts conduct from being

---

[89] *See* TEX. PENAL CODE arts. 1373 (titled, "Killing animal to injure owner" and providing criminal punishment for "[w]hoever shall wilfully kill, maim, poison, or disfigure any horse, ass, mule, cattle, sheep, goat, swine, dog, or other domesticated animal, or any domesticated bird of another, with intent to injure the owner thereof"), 1374 (titled, "Cruelty to animals" and providing criminal punishment to one who "needlessly mutilates or kills any animal") (1925). *See also id.*, arts. 1373, 1374 (Vernon's 1948). The same chapter of the old Penal Code also contained a catch-all provision that penalized the injuring of personal property, to the extent such conduct was not covered by another provision. *See id.* art. 1350 (Vernon's 1948).

[90] *See* TEX. ALC. BEV. CODE § 101.31 (crime to "manufacture, distill, brew, sell, import into the state, export from the state, transport, distribute, warehouse, store, solicit or take orders for, or possess with intent to sell an alcoholic beverage" in a "dry area" unless otherwise provided by the Alcoholic Beverage Code); *id.* §§ 251.71, 251.72 (referring to local-option election as method of changing status of a "wet" or "dry" area).

a crime, in one place but not another,[91] and so have we.[92]  Article 1371a created for dangerous dogs what other local-option laws created for alcoholic beverages:  In some counties, one could kill a dog under certain circumstances without fear of criminal and civil liability, and in other counties, one could not.

With the advent of the modern Penal Code in 1974, the legislature moved Article 1371a to the Texas Revised Civil Statutes.[93]  This move was purely a housekeeping measure, which was not meant to change the substantive meaning of the statute:

> DISPOSITION OF UNREPEALED ARTICLES.  (a) The purpose of this section is to provide for transfer of articles of the Penal Code of Texas, 1925, which are not repealed by this Act to the civil statutes or other appropriate places within the framework of Texas statute law, without reenactment and without altering the meaning or effect of the unrepealed articles, so that when this Act takes effect there will be only one Texas Penal Code without the confusion that would result if remnants of the old Penal Code were allowed to continue to exist in that form in the statute books . . . . (d) Nothing in this section or done under its authority alters the

---

[91]  *Ohio ex rel. Lloyd v. Dollison*, 194 U.S. 445, 447-49 (1904) ("Plaintiff in error further urges that to make an act a crime in certain territory and permit it outside of such territory is to deny to the citizens of the State the equal operation of the criminal laws" but "the power of the State to pass a local option law . . . is not an open question," citing *Rippey* (see below)); *Rippey v. Texas*, 193 U.S. 504, 509-10 (1904) ("But the State has power to prohibit the sale of intoxicating liquors altogether, if it sees fit, . . . and that being so it has power to prohibit it conditionally. It does not infringe the Constitution by giving those in favor of the sale a chance which it might have denied . . . . The State has absolute power over the subject. It does not abridge that power by adopting the form of reference to a local vote. It may favor prohibition to just such degree as it chooses, and to that end may let in a local vote upon the subject as much or as little as it may please. There is no such overmastering consideration of expediency attaching everywhere and always to the form of voting, still less is there any such principle to be drawn from the Fourteenth Amendment, as requires the two sides of a vote on prohibition to be treated with equal favor by the State, the subject matter of the vote being wholly within the State's control.").

[92]  *Letcher v. State*, 126 Tex. Crim. 593, 601-02, 73 S.W.3d 100, 104-05 (1934) (on State's motion for reh'g).

[93]  Acts 1973, 63rd Leg, R.S., ch. 399, disposition table, p. 996e, eff. Jan. 1, 1974 (Art. 1371a becomes TEX. REV. CIV. STAT. 192-3).

meaning or effect of any statute of this state.[94]

In 1989, the legislature recodified the provision in the Revised Civil Statutes as part of the

Health and Safety Code, with the provision at issue becoming § 822.033, providing in relevant part:

> (a) A dog that is attacking, is about to attack, or has recently attacked sheep, goats, calves, or other domestic animals or fowls may be killed by any person witnessing or having knowledge of the attack.

> (b) A person who kills a dog as provided by this section is not liable for damages to the owner of the dog.[95]

With this recodification, the structure of the statute was changed from a single paragraph to a statute

that had subsections. While the old statute had joined two elements—(1) the authorization to kill

a dog and (2) the immunity from civil liability—in a single sentence with the conjunctive "and," the

new statute placed the two elements in separate subsections. This change in structure might, without

legislative guidance, raise the question of whether a change in the meaning of the statute had

occurred, but the legislature explicitly provided that no substantive change was intended:

> LEGISLATIVE INTENT OF NO SUBSTANTIVE CHANGE. This act is enacted under Article III, Section 43, of the Texas Constitution. This is intended as a recodification only, and no substantive change in the law is intended by this Act.[96]

In 2003, the legislature amended the statute to its current form.[97] The statute was renumbered

---

[94] *Id.*, § 5(a), (d), p. 995-96.

[95] Acts 1989, 71ˢᵗ Leg., R.S., ch. 678, § 1, p. 3142, eff. Sept. 1, 1989 (codifying part of Tex. REV. CIV. STAT. 192-3, with some changes in language and organization, as TEX. HEALTH & SAFETY CODE § 822.033). The new Health and Safety Code provision also contained subsection (c), which carried forward the authorization for "any person" to detain or impound a dog described by subsection (a), and it contained subsection (d), which carried forward the authorization for certain public officials and law-enforcement officers to kill the dog if the owner fails to do so. *Id.*

[96] *Id.*, § 14, p. 3165.

[97] Acts 2003, 78ᵗʰ Leg., ch. 1002, § 1, eff. Sept. 1, 2003.

from § 822.033 to § 822.013,[98] which had the effect of changing the local-option law into one of statewide applicability.[99] The legislature also made some substantive changes to the statute. The words "or coyote" were added to all references to a "dog."[100] Any person "witnessing" an attack was still authorized to kill a dog, but the legislature narrowed the class of people who could kill a dog on the basis of having "knowledge" of an attack to the attacked animal's owner or someone acting on the owner's behalf.[101] The legislature made some other changes, including changes to subsections (c) and (d) of the statute and the addition of the new subsection (e) that contained the hunting-license exemption.[102] None of these substantive changes appears to be designed to eliminate any defense to criminal liability provided by subsection (a).

The bill analysis of the 2003 amendment referred to the need for statewide protection for those who kill dogs that threaten their livestock:

> Currently Texas ranchers and cattlemen are losing livestock because of attacks by dogs, coyotes, and crossbreeds between dogs and coyotes. No statewide statute protects the owners of livestock who may need to use deadly force to protect their

---

[98]  *Id.*

[99]  *See Volosen*, 227 S.W.3d at 80.

[100]  Acts 2003, 78th Leg., ch. 1002, § 1 (revisions to § 822.033, now § 822.013).

[101]  *Id.* (§ 822.013(a)(2)).

[102]  In addition to adding the hunting-license exemption, the legislature replaced references to "sheep, goats, and calves" with the word "livestock," limited the ability to detain or impound a dog to a landowner who discovers the dog on his property, gave a landowner who captures a dog or coyote the option to turn the animal over to animal control, required the owner of the attacker dog to control it rather than to kill it, deleted the provision authorizing certain public officials and law-enforcement officers to kill a dog, and added references to the "keeper" or "person in control" of the dangerous dog or coyote. *See id.* (§ 822.013(a)-(e)).

livestock from these attacks.[103]

What the statutory renumbering and the bill analysis show is that the legislature intended to extend to the entire state the protection that existed for "opt in" counties under former § 822.033 (with some modifications). Nothing in the textual revisions to the statute or the legislative history suggests that the legislature intended to change the character of the statute from one that protects against both criminal and civil liability to one that protects against only civil liability.

### 6. *History of § 42.092*

We now turn to the history of § 42.092, which includes the provision that defines the offense with which appellant was charged. The State points out that the predecessor statute, former § 42.09, made it an offense to kill or injure an animal "without legal authority or the owner's effective consent."[104] The phrase "legal authority" is not contained in the current provision under which appellant was prosecuted, § 42.092(b)(6).[105] The State also points to legislative history that shows that the phrase "legal authority" was considered in connection with the current provision but was ultimately not included.[106] The State seems to be suggesting that, by eliminating the offense element that the actor's conduct be "without legal authority," the legislature intended to eliminate any

---

[103] Senate Research Center, Bill Analysis, C.S.H.B. 151, 78th Leg., R.S., digest and purpose (May 21, 2003).

[104] *See* TEX. PENAL CODE § 42.09(a)(9) (West 2006) ("injures an animal . . . belonging to another without legal authority or the owner's effective consent"). *See also id.* § 42.09(a)(5) ("kills, seriously injures, or administers poison to an animal . . . belonging to another without legal authority or the owner's effective consent").

[105] *See* TEX. PENAL CODE § 42.092(b)(6) ("without the owner's effective consent, causes bodily injury to an animal"). *See also id.* § 42.092(b)(2) ("without the owner's effective consent, kills, administers poison to, or causes serious bodily injury to an animal").

[106] *See* Senate Amendments: Section-by-Section Analysis, H.B. 2328, 80th Leg., R.S. (2007).

possible defense based upon § 822.013's authorization to kill a dog.

The State's suggestion, based upon the language of § 42.092's offense provisions, suffers from the same flaw as the State's previous § 42.092-specific arguments: § 42.092 is not the only statute to which § 822.013 might provide a defense. As we have explained earlier, the offense of criminal mischief, defined by § 28.03, could also be used to prosecute a person who has killed or injured the domestic animal of another person. And the phrase "without legal authority" has never been an element of criminal mischief.[107] Because offenses that contain or formerly contained the element "without legal authority" are not the only offenses to which § 822.013 might provide a defense, the removal of that element from a particular offense is not significantly probative of whether § 822.013 provides a general defense to criminal prosecution. And if we determine that § 822.013(a), by itself, provides a general defense to criminal prosecution, the phrase "without legal authority" would not be needed to incorporate that general defense into a particular statute, and so the deletion of that phrase would have no effect on the availability of such a general defense.[108]

Moreover, when Article 1371a was first enacted in 1937, statutes that proscribed the killing of animals did not contain the "without legal authority" element.[109] Nevertheless, we have concluded

---

[107] *See* TEX. PENAL CODE § 28.03 (Vernon's 1974, West 2014).

[108] It is unclear what benefit the incorporation of an outside statute into the element "without legal authority" would have to a defendant beyond what the outside statute would confer if it, by itself, provided a criminal defense. *See Volosen*, 227 S.W.3d at 82 ("Although 'without legal authority' constitutes an element of the offense of cruelty to animals, the State provided *prima facie* support for that element when it proved that the dog was owned by someone other than appellant. Appellant wishes to rely upon an entirely different statute to supply legal authority for his conduct. In doing so, he has essentially invoked a defense, upon which he has the burden of production.").

[109] *See*, this opinion, footnote 89.

today that Article 1371a provided a defense to the offenses in those statutes.[110] From Article 1371a's inception, the defense it created did not depend upon the particular language contained in the statutes that defined various offenses.[111] And as we have explained, the character of Article 1371 as providing a criminal defense has been preserved through each succeeding version of the law.[112]

The State also contends that the legislature evinced its awareness of relevant Health and Safety Code provisions because the bill that created § 42.092 also amended § 821.023, relating to hearings concerning the seizure of an animal that has been treated cruelly. We do not find persuasive the State's argument that the legislature's amendment of a provision in Chapter *821* shows that it had a provision in Chapter *822* in mind. And, even if accepted, the contention that the legislature had Chapter 822 in mind cuts both ways: The legislature may have seen no need to include language designed to incorporate § 822.013 if it already believed that the statute provided a defense on its own. And in any event, if § 822.013(a), by itself, provided a general defense to criminal prosecution, then the legislature would have had to act to exclude it as a defense under § 42.092, and as we have explained earlier, it did not.[113]

Finally, the State relies on legislative history to an amendment to a predecessor to § 42.092. In support of a 1991 amendment to § 42.09 that adds what is now § 42.092(e)(1), Representative Junell, the House Sponsor of Senate Bill 17, characterized former § 822.033 as a civil provision:

All this bill does is add as a defense to the prosecution of cruelty to animals that it is

---

[110] *Id.*, discussion in Part II.E.5.

[111] *See id.*

[112] *Id.*

[113] *See id.*, footnote 82 and accompanying text.

a defense to prosecution to cruelty to animals that the animal was discovered on the person's property in the act of or immediately after injuring or killing the person's goat, sheep, cattle, horse, swine, or poultry and that the person killed or injured the animal at the time of this discovery. There is a civil statute, Mr. Chairman, that's in the Health and Safety Code 822.033 that is a defense to a civil cause of action but is not a defense to a criminal cause of action for that and caselaw does not provide any sort of guidance that there is any kind of defense under the criminal statute.[114]

But the amendment in question was an amendment to § 42.09, not to § 822.033. What Rep. Junell thought about a statute that was not being amended is not controlling, nor, in the present context, even particularly persuasive. It is axiomatic that "one session of the legislature does not have the power to declare the intent of a past session, and a legislative construction of an act of another legislature is uniformly held to be entitled to little weight."[115]

### 7. Consequences of a Particular Construction

As seen above, the legislative history to § 822.013 described its purpose as conferring protection on those who need to defend their animals from dangerous dogs (and coyotes). The idea that the statute provides protection would be seriously undermined if the statute provided protection only from a monetary award and allowed the actor to be criminally prosecuted. Moreover, because of the possibility of restitution in criminal proceedings, construing § 822.013 to provide immunity only from civil suit means that it would confer no protection at all. Under Article 42.037 of the Code of Criminal Procedure, a court can award restitution for any "damage to or loss or destruction of

---

[114] Rep. Junell, Public Hearing, House Comm. on Criminal Jurisprudence, S.B. 17, Tape 1, Side A (July 16, 1991).

[115] *Ex parte Schroeter*, 958 S.W.2d 811, 813 (Tex. Crim. App. 1997). *See also Volosen*, 227 S.W.3d at 80 ("But in interpreting a prior law, we generally accord little weight to subsequent legislative enactments.").

property" suffered by the victim of the offense.[116]

The State contends however, that § 822.013 is really just a protection against "monetary double-dipping": "§ 822.013 can be regarded as an act of legislative grace on the civil front because § 42.092 can accommodate monetary property damages through an order of restitution." We cannot agree, after examining the language and history of § 822.013, that this statute was designed as a mere safeguard against monetary double dipping.[117] Moreover, the criminal-restitution statute already contains prohibitions against double dipping:

> The court may not order restitution for a loss for which the victim has received or will receive compensation only from a source other than the compensation to victims of crime fund.

> * * *

> Any amount recovered by a victim from a person ordered to pay restitution in a federal or state civil proceeding is reduced by any amount previously paid to the victim by the person under an order of restitution.[118]

And non-restitution damages for death or injury to a dog (such as loss of companionship) were never a possibility for § 822.013 or its predecessors to guard against, as it has been the law since at least 1891 that a person is not entitled to recover non-economic damages in a civil suit for death or injury to a domestic animal.[119] Consequently, even without § 822.013, the law would prevent double

---

[116] TEX. CODE CRIM. PROC. art. 42.037(b)(1)(B).

[117] Moreover, one should wonder why the legislature would confer grace with respect to monetary awards for killing a dog but not for killing other domestic animals. Immunity from both criminal and civil liability would make sense, however, if the object were to give people more leeway in killing dogs on the basis that those animals are more dangerous, numerous, and/or mobile than other types of animals that could kill domestic animals.

[118] *Id.* art. 42.037(f)(1), (2).

[119] *Strickland v. Medlen*, 397 S.W.3d 184 (Tex. 2013).

dipping with regard to monetary awards in connection with the death or injury of a dog.

### III. CONCLUSION

After examining the text and history of § 822.013 and other relevant statutes, we conclude that § 822.013(a) provides a defense to criminal prosecution and that such a defense can be raised in a prosecution under § 42.092(b)(6).[120] We also conclude that appellant was permitted to preserve error either by lodging a sufficiently specific objection in compliance with Article 36.14 or by submitting a proposed instruction in compliance with Article 36.15. Consequently, we affirm the judgment of the court of appeals.

Delivered: November 19, 2014
Publish

---

[120] We need not address appellant's argument, based in part on *United States v. Cardiff*, 344 U.S. 174 (1952), that due process requires that we construe § 822.013 in his favor. *See Cardiff*, 344 U.S. at 176 (due process requires that a person be given fair warning that a statute or combination of statutes makes his conduct criminal). *See also Ex parte White*, 400 S.W.3d 92, 94 (Tex. Crim. App. 2013) ("it is desirable to construe a statute to avoid a potential constitutional violation"). Nor do we need to address whether the rule of lenity might apply to a construction of § 822.013. *See Ex parte Forward*, 258 S.W.3d 151, 154 n.19 (Tex. Crim. App. 2008) (rule of lenity provides the rule of decision only "when both alternative choices or definitions are more-or-less equally reasonable").