OPINION
Opinion by
Justice Benavides
Appellant, Robert Michael Arteaga, appeals his convictions in separate cause *679 numbers for multiple counts of sexual assault of a child and possession of child pornography, a first and third degree felony respectively. See Tex. Penal Code Ann. §§ 22.011, 43.26 (West, Westlaw through 2016 R.S.). By two issues, Arteaga argues: (1) the trial court committed egregious error by charging the jury under the consanguinity statute rather than requiring proof of bigamy as specified in the sexual assault statute; and (2) the trial court committed error by preventing his trial counsel from arguing to the jury that they could consider Arteaga’s and other’s perspectives on whether the images possessed were lewd. We affirm.
I. Background [1]
In cause number 13-13-00612-CR, a jury convicted Arteaga of twenty-three counts of sexual assault of a child.[2] See Tex. Penal Code Ann.§ 22.011. The complainant, HSB Doe (“Doe”), was his biological daughter.[3] Sexual assault of a child is a second degree felony, except it can rise to a first degree felony if: “the victim was a person whom the actor was prohibited from marrying or purporting to marry or with whom the actor was prohibited from living under the appearance of being married under Section 26.01.” Tex. Penal Code Ann. § 22.011(f). Arteaga was charged with sexual assault of a child he was “prohibited from marrying”, Doe, in the indictment. This charge made all the counts charging him under this cause number first degree felonies. Id. Section 25.01 defines the offense of bigamy. See Tex. Penal Code Ann. -§ 25.01 (West, Westlaw through 2015 R.S.). The jury charge included the definition for consanguinity from the Texas Family Code, which specifies what would constitute a void marriage. See Tex. Family Code Ann. § 6.201 (West, Westlaw through 2015 R.S.). Additionally, a special issue was also submitted along with the jury charge asking the jury: “Do you find from the evidence-beyond a reasonable doubt that the Defendant, Robert Michael Arteaga, was prohibited from marrying [Doe]?” Arteaga did not object to the inclusion of the definition of consanguinity in the jury charge. The jury convicted Arteaga of all twenty-three counts of sexual assault of a child, answered yes to the special issue, and sentenced him to life imprisonment in the Texas Department of Criminal Justice—Institutional Division (“TDCJ-ID”) on each count.
In cause number 13-13-00613-CR, the jury convicted Arteaga of seventeen counts of possession of child pornography.[4] See Tex. Penal Code Ann. § 43.26. The illegal photographs at issue were found on Artea-ga’s personal computer and depicted his daughter, Doe, engaging in sexual acts. Arteaga maintained that he did not consider the photographs to be child pornography. The jury found Arteaga guilty on all counts of the jury charge and sentenced *680 him to ten years imprisonment in the TDCJ-ID and assessed a $10,000 fine on each count. The trial court sentenced Ar-teaga accordingly and ordered that all sentences be served consecutively. See Tex, Penal Code Ann. § 3.03 (West, Westlaw through 2015 R.S.).
During trial, the State put on multiple witnesses, including the complainant, Doe. Doe testified that Arteaga had been molesting her since the age of four. Doe made an outcry to her high school counsel- or at the age of fifteen. Doe testified that the molestation had occurred in three different counties throughout her life: Harris, Blanco, and Burnet Counties. Doe stated that Arteaga began touching her genital area around the age of four, and he told Doe it was “something special that they shared” and “not to tell anyone.” When Doe was around six or seven years old, she testified Arteaga began having them both perform oral sex on each other. Doe stated that Arteaga began having vaginal intercourse with her around the third grade. She also testified, that Arteaga took videos of them having vaginal intercourse at least twice and put the videos up on the internet. While filming the videos, Arteaga made Doe wear masks to hide her face. Doe identified the masks during trial from photographs taken by police at Arteaga’s home.
Arteaga told Doe she was special and if she became pregnant, they would get married. Doe testified that Arteaga had a vasectomy to prevent her from getting pregnant, and she had her own bedroom next to his so he would have easier access to Doe.[5] On her fourteenth birthday, Ar-teaga took Doe to San Antonio, purportedly to visit the Alamo. Instead of going to the Alamo, Arteaga got- a hotel room where they “drank liquor and had sex.” Around that time, Doe testified Arteaga began penetrating Doe’s anus with his penis. She stated that Arteaga had intercourse with her repeatedly, but that it became more frequent as she got older. By the time she was around fourteen, Doe and Arteaga would have vaginal intercourse at least once a week “[e]verytime, like, [appellant’s girlfriend] would go to the store,” Each incident would normally include Doe performing oral sex on Arteaga as well. Doe testified that Arteaga would create situations where they would be alone: “Whenever we [needed] groceries he would send [appellant’s girlfriend] to the store and have me stay or he would text me and be like tell [appellant’s girlfriend] you don’t feel good or you just want to stay home, you just don’t want to go with her to the store.” Doe testified appellant’s girlfriend would go to the store often because there were seven people living in the household.
Doe also testified that Arteaga used a variety of adult “sex toys” on her. During trial,. Doe identified many of the “toys” found at Arteaga’s home. Doe also identified several pornographic videos seized from Arteaga’s home because she stated Arteaga would make her watch them. Several nude photographs of Doe were found on Arteaga’s computer. Doe testified she took those photographs with her cell phone at Arteaga’s request, mostly when she was visiting her grandparents for the summer. Doe said her older sister knew about the molestation and acted as a lookout for Arteaga. At one point, Doe testified that Arteaga had spoken about a sexual encounter involving Doe, her sister, and him, but that it never occurred. Doe stated she learned the relationship she had with Arteaga was wrong as she got older and asked him to stop. Arteaga said he *681 would stop their relationship but it would “break his heart.” Both Doe and her older sister went to the school counselor to make the outcry.
After her outcry, Doe and her siblings were removed from Arteaga by Texas Child Protective Services and placed with Arteaga’s parents in Galveston. Doe testified Arteaga’s family pressured her to recant the allegations. Arteaga called Doe repeatedly and devised a story for Doe to tell law enforcement. Doe said that she did recant her story to police, but would not have done so without the pressure she felt from her family.
The State also called Amy Callaway, the forensic interviewer, to testify. Callaway testified about “grooming” and the effect it can have on children who are abused. Callaway stated it was common for children to outcry and then recant. In certain cases, the children will then reaffirm the outcry after time passes. Callaway said it was very common for children who were victimized to still love and want to be around the perpetrator, and that this was one of the worst cases of abuse she had ever seen.
Doe was examined by a sexual assault nurse examiner (“SANE nurse”) following her outcry and interview. The SANE nurse identified a tear to Doe’s hymen typical with sexual penetration prior to sexual maturity. She stated Doe had a significant amount of scar tissue in her genital area, which showed her -that the abuse had been occurring for a long time. Doe also had healing tears to her anus. The SANE nurse also found a genital wart on Doe, but could not conclude with certainty that it was a result of sexual intercourse.
Arteaga’s girlfriend was called by the State to testify. She stated that Arteaga was very controlling and his behavior with Doe was very different from the other children in the household. She stated sometimes she felt like Doe was Arteaga’s girlfriend and she was the child. The girlfriend testified they did use “sex toys” in their intimate encounters, but she did not recognize all the “toys” that were found at the home. She also stated Artea-ga and she did not use lubricant, even though it was found with the “toys” as well. The girlfriend also testified that after Doe was removed from the home, she overheard Arteaga on the phone with Doe and her sister. He was telling the girls to “stick to their stories” and would not speak to the girls in her presence. The girlfriend stated that now “she felt stupid” and all the behavior she had witnessed over their years together “makes sense.”
Arteaga testified in his own defense and stated Doe made the- allegations up because she wanted to live with her biological mother, who was less strict than he was. He stated that his older daughter had shown him the nude photographs of Doe on Doe’s cell phone, saying that Doe was sending them to her boyfriend. Arteaga testified that he had his older daughter send the photos to his cellphone and he placed them on his laptop computer so it would be easier to confront Doe with them. However, Doe did not recall being confronted with the photographs during her testimony. After a finding of guilty by the jury, this appeal followed.
II. Jury Charge Error
By his first issue, Arteaga argues “it was error to charge the jury under the consanguinity statute rather than requiring proof of bigamy as specified in the sexual assault statute.” We disagree.
A. Standard of Review
“In analyzing a jury-charge issue, our first duty is to decide if error *682 exists.” Rodriguez v. State, 456 S.W.3d 271, 280 (Tex.App.—Houston [1st Dist.] 2014, pet ref'd.) (citing Almanza v. State, 686 S.W.2d 157, 174 (Tex.Crim.App.1985) (op. on reh’g)). Only if error is found, do we then consider whether an objection to the charge was made and analyze for harm. Id. “The degree of harm necessary for reversal depends upon whether the error was preserved.” Id. (citing Hutch v. State, 922 S.W.2d 166, 171 (Tex.Crim.App.1996)). If “an error is preserved with a timely objection .... then the jurycharge error requires reversal if the appellant suffered some harm as a result of the error.” Sanchez v. State, 376 S.W.3d 767, 774 (Tex.Crim.App.2012) (citing Almanza, 686 S.W.2d at 171).
The Court of Criminal Appeals “has interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal.” Rodriguez, 456 S.W.3d at 280. But if the “defendant never presents a proposed jury instruction (or fails to object to the lack of one), any potential error in the charge is reviewed only for ‘egregious harm’ under Almanza.” Oursbourn v. State, 259 S.W.3d 159, 174 (Tex.Crim.App.2008). As in this ease, when an “appellant d[oes] not object to the charge, the error does not result in reversal ‘unless it was so egregious and created such harm that appellant was denied a fair trial.’ ” Warner v. State, 245 S.W.3d 458, 461 (Tex.Crim.App.2008) (citing Almanza, 686 S.W.2d at 171). “Errors that result in egregious harm are those that affect the ‘very basis of the case,’ ‘deprive the defendant of a valuable right,’ or ‘vitally affect a defensive theory.’” Warner, 245 S.W.3d at 461-62 (citing Hutch, 922 S.W.2d at 171).
The failure to preserve jury-charge error is not a bar to appellate review but rather establishes the degree of harm necessary to the reversal. Warner, 245 S.W.3d at 461. To establish harm, the “appellant must have suffered actual, rather than theoretical, harm.” Warner, 245 S.W.3d at 461. Neither the State nor the appellant bears the burden on appeal to prove harm. Reeves v. State, 420 S.W.3d 812, 816 (Tex.Crim.App.2013).
B. Applicable Law
A person commits the offense of sexual assault of a child, a second-degree felony, if the person intentionally or knowingly:
(A) causes the penetration of the anus or sexual organ of a child by any means;
(B) causes the penetration of the mouth of a child by the sexual organ of the actor;
(C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;
(D) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or
(E) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor.
Tex. Penal Code Ann. § 22.011(a)(2). “Child” is defined as “a person younger than 17 years of age.” Id. § 22.011(c)(1). The punishment range of § 22.011 is described in subsection f, which states:
An offense under this section is a felony of the second degree, except that an offense under this section is a felony of the first degree if the victim was a person whom the actor was prohibited from marrying or purporting to marry or with whom the actor was prohibited from living under the appearance of being married under Section 25.01.
Id. § 22.011(f). Arteaga was charged by the indictment under § 22.011(f) with a *683 first degree felony on each count of sexual assault because the State alleged in each count of the indictment that Doe was someone that Arteaga was “prohibited from marrying.” Id. Section 25.01 (“the bigamy statute”) of the Texas Penal Code contains the following language:
(a) An individual commits an offense if:
(1) he is legally married and he:
(A) purports to marry or does marry a person other than his spouse in this state, or any other state or foreign country, under circumstances that would, but for the actor’s prior marriage, constitute a marriage; or
(B) lives with a person other than his spouse in this state under the appearance of being married; or
(2) he knows that a married person other than his spouse is married and he:
(A) purports to marry or does marry that person in this state, or any other state or foreign country, under circumstances that would, but for the person’s prior marriage, constitute a marriage; or
(B) lives with that person in this state under the appearance of being married.
See Tex. Penal Code Ann. § 25.01.
C. Discussion
1. Error Analysis
Arteaga argues that the trial court committed reversible error by including the definition of a “void marriage” from the Texas Family Code in the jury charge. See Tex. Family Code Ann. § 6.201. The trial court included in the abstract section of the jury charge the following definition:
You are instructed that a marriage is void if one party to the marriage is related to the other as:
(1) an ancestor or descendant, by blood or adoption;
(2) a brother or sister, of the whole or half blood or by adoption;
(3) a parent’s brother or sister, of the whole or half blood or by adoption; or
(4) a son or daughter of a brother or sister, of the whole or half blood or by adoption.
Id. If error were found from the inclusion of this definition, it would be required to be “egregious harm” in order to warrant a reversal of the trial court’s verdict because Arteaga did not object to the inclusion of this definition in the jury charge. See Oursbourn, 259 S.W.3d at 174.
“It is the application paragraph of a jury charge which authorized conviction, and an abstract charge on a theory of law which is not applied to the facts is insufficient to bring that theory before the jury.” Ramirez v. State, 967 S.W.2d 919, 922 (Tex.App.—Beaumont 1998, no pet.). The “abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge.” Crenshaw v. State, 378 S.W.3d 460, 466 (Tex.Crim.App.2012); see also Plata v. State, 926 S.W.2d 300, 302 (Tex.Crim.App.1996), overruled on other grounds by Malik v. State, 953 S.W.2d 234 (Tex.Crim.App.1997). Ramirez goes on to state:
An abstract statement of the law that goes beyond the allegations in the indictment ordinarily will not present reversible error because ordinarily such expansion on the indictment’s allegations are effectively restricted by the charge’s application of the law to the facts, which limits the jury’s deliberations to the allegations in the indictment supported by evidence.
*684 Id.; see also Sandig v. State, 580 S.W.2d 584, 586 (Tex.Crim.App.1979). The Court of Criminal Appeals has evaluated cases on this issue and explained:
Superfluous abstractions, those not necessary to an understanding of concepts or terms contained in the application paragraph, are generally innocuous. Reversible error only occurs in the giving of an abstract instruction when the instruction is an incorrect or misleading statement of a law which the jury must understand in order to implement the commands of the application paragraph .... The inclusion of a merely superfluous abstraction, therefore, never produces reversible error in the court’s charge because it has no effect on the jury’s ability fairly and accurately to implement the commands of the application paragraph or paragraphs.”
Ramirez, 967 S.W.2d at 922 (citing Plata, 926 S.W.2d at 302).
The Court of Criminal Appeals has held that if a jury charge improperly “ ‘singles out a specific type of evidence and tells the jury that it may infer an element of the crime’ from that evidence,” then there is error. Kirsch, 357 S.W.3d at 651 (citing Brown v. State, 122 S.W.3d 794, 800-01 (Tex.Crirm.App.2003)). However, our sister courts have found that even when there is error due to improper definitions, the error is frequently harmless. See Crenshaw v. State, 378 S.W.3d 460, 466 (Tex.Crim.App.2012) (holding that the trial court’s inclusion of per se definition of intoxication did not expand the allegations against the defendant and was not error); Baggett v. State, 367 S.W.3d 525 (Tex.App.—Texarkana 2012, pet. ref d) (holding that the trial court’s definition of “normal use” was harmless error); Trevino v. State, 440 S.W.3d 722 (Tex.App.—Amarillo 2013, no pet.) (holding that even though trial court’s definition of female “genitalia” was a comment on evidence and invaded province of jury, the error was harmless).
Here, Arteaga was charged with twenty-three counts of sexual assault of a child. The jury charge in this cause number given by the trial court was sixteen pages long.[6] The complained-of definition is found on page one of the charge in the abstract section. The definition of a “void marriage” was not referenced or necessary in the application paragraph of the charge. Here, as in Ramirez, the application paragraph limited the circumstances the jury could convict Arteaga on “to circumstances alleged in the indictment.” Id. Error was found to be harmless in Ramirez. Id. We also find here that the inclusion of the definition of “void marriage” in the abstract portion of the jury charge is not error and did not single out any type of evidence necessary to infer an element of the crime of sexual assault of a child. We overrule Arteaga’s first issue.
2. Harm Analysis
However, even assuming the definition was error by the trial court, did it constitute egregious harm? In order to qualify as an error that could have risen to the level of egregious harm, Arteaga must show that the definition from family code section 6.02 “affect[ed] the ‘very basis of [his] case, ‘deprive[d him of] a valuable right,’ or ‘vitally affect[ed one of his] defensive theories].’ ” Warner, 245 S.W.3d at 461-62 (citing Hutch, 922 S.W.2d at 171); see Tex. Family Code Ann. § 6.201. When determining whether a defendant suffered harm, “the reviewing court must *685 consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole.” Rodriguez, 456 S.W.3d at 280; see also Wooten v. State, 400 S.W.3d 601, 606 (Tex.Crim.App.2013).
a. Entire Jury Charge
The first step required to analyze jury charge error is to evaluate the entire jury charge. See Warner, 245 S.W.3d at 461. The
trial court is required to give the jury a written charge ‘setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.’
Kirsch v. State, 357 S.W.3d 645, 651 (Tex.Crim.App.2012) (quoting Tex. Code Crim. Proo, art. 36.14). “We have generally held that, if a jury-charge instruction ‘is not derived from the [penal] code, it is not ‘applicable law” under art. 36.14.” Id. (quoting Walters v. State, 247 S.W.3d 204, 214 (Tex.Crim.App.2007)). “Texas Government Code § 311.011 provides that statutorily undefined words and phrases shall be ‘construed according to the rules of grammar and common usage.’ ” Id. at 650 (quoting Tex. Gov’t. Code Ann. § 311.011 (West, Westlaw through 2015 R.S.). Normally, in looking at jury charge error, the instructions must be construed as a whole and not by isolated extracts, excerpts, or paragraphs. See Smith v. State, 959 S.W.2d 1, 27 (Tex.App.—Waco 1997, pet. ref'd) (holding that whether a jury charge comments on weight of evidence is determined by looking at the jury charge as a whole, not isolated statements); see also Joseph v. State, No. 13-11-00461-CR, 2013 WL 1461841, at *7 (Tex.App—Corpus Christi 2013, pet. refd.) (mem. op., not designated for publication). However, even when an abstract charge is erroneously given on a theory of law, without specific application to the facts of the case, the court of criminal appeals have found this is not error. Hughes v. State, 897 S.W.2d 285, 297 (Tex.Crim.App.1994); see Lewis v. State, 815 S.W.2d 560, 562 (Tex.Crim.App.1991) (holding there was no error in giving superfluous abstract instruction on transferred intent when the issue of transferred intent was not incorporated into the application paragraph).
In analyzing the jury charge as a whole, the definition of “void marriage” was only found on the beginning part of a lengthy jury charge. Additionally, the definition was contained in the abstract section of the charge, which acts as a glossary of sorts for the jury to refer to. The law that governed the case was found in the application section of the charge and contained no reference to the “void marriage” definition. Although the dissent states the proper statutory definition for “prohibited from marrying” is contained in section 25.01 of the penal code, the language is not found in the section. See Tex. Penal Code Ann. § 25.01. “Prohibited from marrying” is not defined in any section of the penal code. Since no definition was available within the penal code, “prohibited from marrying” should have been determined according to the “rules of grammar and common usage.” See Kirsch, 357 S.W.3d at 650. Since there was no penal code definition of “prohibited from marrying,” and “void marriage” was not an element of the offense Arteaga was charged with, the inclusion of the definition of “void marriage” was not an “incorrect or misleading statement of law” and harmless. See Kirsch, 357 S.W.3d at 650-51; Plata, 926 *686 S.W.2d at 302. Any harm would be minimal.
b. State of the Evidence
Second, we must look at the state of the evidence, including the contested issues and weight of probative evidence. See Warner, 245 S.W.3d at 461. The State called multiple witnesses throughout this trial. Although Doe was the State’s main witness, the evidence presented was overwhelming to prove that Arteaga committed sexual assault. The forensic interviewer testified to the graphic, specific details given by Doe and explained why some victims recant allegations of abuse. The SANE nurse testified regarding to the scar tissue that was present on Doe’s genital area that indicated a history of abuse. Arteaga’s girlfriend testified to the behavior she witnessed between Arteaga and Doe and how it all “made sense” now. None of the evidence was ever about Arteaga contesting the fact that Doe was his biological daughter, that Arteaga was not married, or how he would not be allowed to marry Doe. Based on the evidence presented, the inclusion of the definition of “void marriage” would have been minimal in terms of harm.
c. Argument of Counsel
Third, we must look to the argument of counsel. Id. In closing arguments, the State did allude to the definition given by the trial court, albeit briefly. The prosecutor stated:
We, of course, know that [Doe] is not the defendant’s spouse and we also know that you can’t marry your daughter. We don’t even need to—we all know that. You can’t marry your daughter and the Court sets it out here that a marriage is void if it’s to an ancestor or descendant by blood or adoption and then there’s another categories. You can’t marry your sister. You can’t marry your brother, et cetera.
However, the substantial remainder of the prosecutor’s closing argument went to the facts of the case. Although the State did allude to the definition, it was not repeatedly brought up. The definition was addressed at the beginning and briefly. Since the State did address the definition, that could weigh slightly towards harm,
d.Other Relevant Information
Fourth, we can look to any other relevant information revealed by the record of the trial as a whole. Id. Throughout the trial, Arteaga’s defense was that Doe was making up these allegations. Nothing was ever raised by either side about bigamy, void marriage, or even anyone wanting to get married. The State was not required to prove bigamy as bigamous conduct was not alleged in the indictment. The trial court used caution to make sure the enhancement element was found by sending Special Issue # 1 to the jury to find true or not true. The jury did not send out any jury notes relating to the definition of “void’ marriage, the special issue, or ask for clarification regarding these matters. It is clear the jury understood what “prohibited from marrying” meant due to their affirmative response to Special Issue # 1. It was also clear from the testimony that Doe was Arteaga’s biological daughter. Since there is no definition in the penal code regarding “prohibited from marrying,” it should be defined by each juror from common usage. The jury understood that a parent cannot marry their child and such a relationship would be “prohibited” based on their own personal knowledge.
Although some of the elements might show slight harm, none of the four factors show the inclusion of the family law definition rise to the level of egregious harm. See See Warner, 245 S.W.3d at 461. Ar-teaga must show “actual, not theoretical harm”' in order to rise to the level of *687 egregious harm. Actual harm was not shown here, and as such, the proper ruling is the error, if any, was harmless and not egregious. As such, we affirm the conviction of sexual assault of a child as a first-degree felony on all twenty-three counts.
III. Penal Code § 22.011(f)
Arteaga also argues that he was convicted on a basis not authorized by statute because the State did not prove the element of bigamy. The dissent is persuaded by Arteaga’s argument that the “plain language” of § 22.011(f) can only be read as a first-degree felony if Arteaga was a person prohibited from marrying Doe and Arteaga was involved in a bigamous marriage.[7] See Tex. Penal Code Ann. § 22.011(f) (emphasis added). We disagree with this argument and believe section 22.011(f)’s language is ambiguous and Arteaga’s argument would lead to absurd results that could not have been intended by the Legislature. See Chase v. State, 448 S.W.3d 6, 11 (Tex.Crim.App.2014); see also Price v. State, 434 S.W.3d 601, 605 (Tex.Crim.App.2014). As such, this ambiguity should be addressed by this Court,
a. Statutory Interpretation
In construing a statute, we normally give deference to the plain meaning of the words. See Chase, 448 S.W.3d at 11. “Thus, if the meaning of the statutory text, when read using the established canons of construction relating to such text, should have.been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning.” Ex Parte Hernandez, 275 S.W.3d 895, 899 (Tex.Crim.App.2009); see also Smith v. State, 789 S.W.2d 590, 592 (Tex.Crim.App.1990). ‘Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.” Hernandez, 275 S.W.3d at 899 (citing Coit v. State, 808 S.W.2d 473, 475 (Tex.Crim.App.1991) (en banc)).
But “appellate courts must construe a statute in accordance with the plain meaning of its text unless the language of the statute is ambiguous or the plain meaning would lead to absurd results that the legislature could not have possibly intended.” Chase, 448 S.W.3d at 11 (emphasis added); see also Price, 434 S.W.3d at 605. “When used in the proper manner, this narrow exception to the plain meaning rule does not intrude on the lawmaking powers of the legislative branch, but rather demonstrates respect for that branch, which we assume would not act in an absurd way.”[8] Hernandez, 275 S.W.3d at 900; see also Boykin v. State, 818 S.W.2d 782, 785 (Tex.Crim.App.1991) (en banc). If the
plain language of a statute would lead to absurd results, or if the language is not *688 plain but rather ambiguous, then and only then, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such extratextual factors as executive or administrative interpretations of the statute or legislative history.
Id. at 785-786 (emphasis in original), A “statute is ambiguous when the statutory language may be understood by reasonably well-informed people in two or more different senses; conversely, a statute is unambiguous when it permits only one reasonable understanding.” Price, 434 S.W.3d at 605; Bays v. State, 396 S.W.3d 580, 584-85 (Tex.Crim.App.2013) (ambiguity exists when reasonably well-informed persons may understand a statute to have two or more different meanings). Some
extratextual factors include but are not limited to: (1) the object sought to be obtained, (2) the circumstances under which the statute was enacted, (3) the legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) the consequences of a particular construction, (6) administrative construction of the statute, and (7) the title (caption), preamble, and emergency provision.
Chase, 448 S.W.3d at 11.
b. Analysis
We find that § 22.011(f) is not clear and unambiguous. See Tex. Penal Code Ann. § 22.011(f). The dissent would hold that to interpret § 22.011(f) to require proof under § 25.01 appears consistent with interpretations by other Texas appellate courts. See Tex, Penal Code Ann. §§ 22.011(f), 25.01. However, the cases relied upon by the dissent are distinguishable from the case at hand. The dissent cites to State v. Rosseau, State v. Hernandez, and Holt v. State to hold that bigamy is required in order to prove the enhancement element of 22.011(f). See State v. Rosseau, 398 S.W.3d 769, 777 (Tex.App.—San Antonio 2011), aff'd, 396 S.W.3d 550 (Tex.Crim.App.2013); State v. Hernandez, 395 S.W.3d 258, 260-61 (Tex.App.—San Antonio 2012, no pet.); Holt v. State, No. 03-08-00631-CR, 2010 WL 2218543, at *1 n, 1 (Tex.App.—Austin June 2, 2010, pet. refd); see also Tex Penal Code Ann. § 22.011(f). However, none of those cases address the issue we are confronted with here, and instead the present case appears to present an issue of first impression.
Rosseau was indicted for sexual assault of a child with each count of his indictment containing the whole of section 22.011(f). See Tex Penal Code Ann. § 22.011(f); see also Rosseau, 398 S.W.3d at 772. Additionally, Rosseau was married at the time the abuse occurred. Id. On appeal, the State challenged the granting of a pre-trial motion to quash the indictment. Rosseau, 396 S.W.3d at 552. Rosseau raised an issue regarding the constitutionality of the statute as a whole, claiming it was facially unconstitutional because it punished “a class of individuals” more severely for being married. Id. at 556. However, the Court of Criminal Appeals did not agree that the statute was facially unconstitutional. Id..at 558. Since the entire section of 22.011(f) was used in the indictment and jury charge error was not an issue complained of, Rossecm does not clarify any ambiguity in the statute regarding the reference to § 25.01, especially in regards to jury charge language. See id.; Tex. Penal Code Ann. §§ 22.011(f), 25.01.
Hernandez is likewise distinguishable from the present case as it also refers to a pre-trial motion to quash the indictment. See Hernandez, 395 S.W.3d at 258. Hernandez argued that the language in the indictment that the victim was “a person whom Hernandez was prohibited from *689 marrying under Section 25.01” did not give her sufficient notice of how the victim, was a person who Hernandez was prohibited from marrying. Id, at 260; see also Tex. Penal Code Ann. § 25.01. The .trial court found that tracking the indictment was sufficient notice. Id. at 262. Again, Hernandez is factually distinguishable because it deals with a pre-trial motion to quash and Hernandez was a married individual. See id. at 262 n. 1. No challenge was made to the language used or jury charge definitions. See id.
Holt is a case out of the Third Court of Appeals, where this case is transferred from. Holt, 2010 WL 2218543. Holt is also factually distinguishable from this case because it deals with a double jeopardy claim. Id. at *2. However, a footnote in Holt that states:
Sexual assault is a first degree felony if the victim was a person whom the defendant was prohibited from marrying under penal code section 25.01. Tex. Penal Code Ann. § 22.011(f) (West Supp.2009). Section 25.01 prohibits bigamy. Id. § 25.01. The evidence shows that appellant was legally married to another person at the time he sexually assaulted the complainant, and thus he was prohibited from marrying the complainant under section 25.01(a)(1).
Id. at *4, n. 1. The Austin Court of Appeals puts “prohibited from marrying” and ties it to the bigamy statute of § 25.01 because Holt was married at the time the assault with the complainant occurred. See Tex. Penal Code Ann. § 25.01. Our current case is distinguishable from all the cases because Arteaga was not married at any relative time during the assaults of Doe, and therefore, could not have committed the offense of bigamy.
Even though the dissent believes that all the cases cited require both proof of § 22.011(f) and § 25.01 in order to prove the enhanced punishment range, this cannot be what the legislature intended. See Tex. Penal Code Ann. §§ 22.011(f), 25.01. First, 25.01 does not have any reference to the language used in the indictment in this case of “prohibited from marrying.” See id. The language of 22.011(f) does incorporate the language of “purports to marry” and “living under the appearance of being married” which is found in section 25.01. See id. Since we should be mindful that “every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause, and word is to be given effect if reasonable and possible,” then it. would be a reasonable interpretation that the phrase “prohibited from marrying” was deliberately not included in section 25.01. Perkins v. State, 367 S.W.2d 140, 146 (Tex.1963); see Tex. Penal Code Ann. §§ 22.011(f), 25.01. Therefore, since the language “prohibited from marrying” used in section 22.011(f) was not used in section -25.01, proving bigamy under section 25.01 would not be a requirement in order for the State to charge using “prohibited from marrying” in section 22.011(f). See Tex. Penal Code Ann. §§ 22.011(f), 25.01.
c. Legislative Interpretation
After reviewing the relevant bills related to section 22.011(f), it would be absurd to think the Legislature only wanted to raise the punishment level of sexual assault of a child offenses solely in bigamous situations. The purpose of Senate Bill 6 (SB 6), under which the modifications to the Texas Penal Code were made, was to protect children and elderly individuals. Senate Comm, on Health and Human Services, Bill Analysis, Tex. S.B. 6, 79th Leg., R.S. (2005). Included in that bill were changes to child, protective and adult protective services and how to improve their effectiveness. See id. “SB 6 seeks to *690 strengthen the state’s ability to protect society’s most vulnerable citizens: abused children, the elderly and the frail” according to the statement of intent in the bill analysis. Id. The language, which adds this penal code enhancement element in SB 6, was an amendment added late in the legislative session, which contained the language found in House Bill 3006 (HB 3006). H.B 3006, 79th Leg., R.S. (2005). Although there was extensive committee analysis of SB 6, none of the analysis or hearing testimony involved reference to the amendment added from HB 3006.
HB 3006 was created with a focus on bigamy, but in the bill analysis, the author clearly distinguishes between the first provision on 22.011(f) and the second and third provisions of 22.011(f). See Tex. Penal Code Ann. §§ 22.011(f). Section 1.02 of the bill analysis states:
Amends Section 22.011(e) and (f) of the Penal Code by providing that it is an affirmative defense to prosecution under Subsection (a)(2) that the actor was not more than three years older than the victim and at the time of the offense was not a person who under Chapter 62 of the Code of Criminal Procedure, had a reportable or adjudication for an offense and the victim was a child of 14 years of age or older; and was not a person whom the actor was prohibited from living under the appearance of being married under Section 25.01. An offense under this section is a second degree felony except it is a first degree felony if the victim was a person whom the actor was prohibited from manning. (emphasis added).
House Comm. On Juvenile Justice & Family Issues, Bill Analysis, Tex. H.B. 3006, 79th Leg., R.S. (2005). Based on the bill analysis, it is clear that the author of HB 3006 did not intend “prohibited from marrying” to include a requirement that the element of bigamy be proven in order to enhance the offense to a first-degree felony. The analysis specifically does not include reference to “prohibited from marrying” nor § 25.01 as part of the same sentence.[9] See Tex. Penal Code Ann.§§ 22.011(f), 25.01. Although a good portion of HB 3006 was written to “regulate those activities associated with bigamy and polygamy,” proving bigamy was not an absolute requirement to making sexual assault of a child a first degree felony when enhancing with the language “prohibited from marrying.” Since the amendment was adopted into SB 6, whose main purpose was to “protect abused children,” it would be absurd to believe that Legislators intended this provision to only protect sexual assault victims where the defendant was involved in a bigamous relationship, focusing on religious groups, instead of child victims that need protection.
A child molested by a family member is most likely whom the Legislature was seeking to protect by this law. If a victim of a sexual assault of a child case was fourteen years or older and molested by a close family member (based on consanguinity), prior to 2005, the highest level offense the State could seek to prosecute the defendant on was a second degree felony, which carries a maximum of twenty-years imprisonment. It is clear the Legislature wanted to protect those child victims. In the same SB 6, an enhancement element was also added to Section 25.02 of the penal code which made the offense of prohibited sexual conduct rise from a third degree felony to a second degree felony when the victim was an an *691 cestor or descendant by blood or adoption of the person charged.[10] See Tex. Penal Code Ann. § 25.02(c) (West, Westlaw through 2015 R.S.). There is no reference to bigamy in the prohibited sexual conduct section. See id. The enhancement element is due solely to the biological relationship between the victim and perpetrator. The difference between the offenses of sexual assault of a ehild and prohibited sexual conduct is the age and ability to consent of the complainant. See Tex. Penal Code Ann. §§ 22.011, 25.02. However, under the law, it does show that the legislature had a problem with sexual relationships between direct family members, with or without consent, and sought to enhance the penalties associated with those crimes.
d. Burden of Proof
Finally, if we would follow what Arteaga argues, then we would be holding the State to a higher burden of proof than found in the indictment. Arteaga was charged with twenty-three almost identical counts in the indictment that stated:
Robert Michael Arteaga, hereinafter referred to as the Defendant, on or about the 25th day of February, 2011, and before the presentment of this indictment, in the County of Burnet, and the State of Texas, did then and there intentionally or knowingly cause the penetration of the sexual organ of HSB Doe, a child who was then and there younger than 17 years of age, and a person whom the defendant was prohibited from marrying, by the defendant’s sexual organ....
It is important to clarify that section 22.011(f) is not a punishment enhancement, but an actual element required to be proven at the guilt-innocence phase for enhancement. However, based on Special Issue # 1, the jury did not convict Arteaga without finding every necessary element of the offense. Based on the jury charge submitted, the State proved every element of sexual assault of a child as well as the enhancement element. The dissent briefly addresses the special issue that was submitted to the jury along with the charge, but finds the jury must have been confused. The jury was not confused and affirmatively believed that Arteaga was prohibited from marrying Doe, his daughter. It was not an oversight by the trial court. That enhancement element was specifically submitted as a special issue to make sure the jury affirmatively believed it to be true. Special issues are submitted in a variety of criminal cases along with the jury charge at the guilt-innocence phase to make sure enhancement elements were proven, such as sexual assault or aggravated assault cases. See Tex. Penal Code Ann. §§ 22.011,22.021, 22.02. It was properly done here, and by doing so, the trial court had assurance the jury believed the State had proved each and every element required from the indictment. The State did not charge Arteaga with bigamy and should not have been required to prove the existence of a bigamous relationship, an element not contained in the indictment, in order to get the enhancement range of punishment.
The trial court submitted a proper jury charge. While the inclusion definition of a “void” marriage could have been error, it was slight and harmless. Evidence did not show that the inclusion of this definition cause Arteaga egregious harm. To hold otherwise cannot be what the legislature intended when enacting section 22.011(f) of the penal code and would lead to absurd results. See Tex. Penal Code Ann. § 22.011(f). We overrule issue one.
*692 III. Closing Argument
By his second point, Arteaga argues the trial court erred by “prevent[ing] appellant from arguing that the jury could consider his and others’ perspectives on whether [nude photographs of Doe] constituted child pornography.” Specifically, Arteaga maintains that the offense of possession of child pornography includes an implied element of scienter, and he should have been allowed to argue that “some people might not consider the photos obscene.” We disagree with appellant’s characterization of the trial court’s ruling and conclude that its actions were not an abuse of discretion.
A.Pertinent Pacts
During Arteaga’s closing argument, the following exchange occurred:
Trial Counsel: And let me point out that, yes, to a stranger those photos are lewd, but nurses and doctors—and you are going to see these photos, and I’ve seen these photos, and as a father and as a lawyer in this case, I don’t view them as lewd. I know that you have to make a decision whether or not when my client looked at them he was viewing them as lewd.
Prosecutor: Judge, I would object. That’s a misstatement of the requirements of the law, whether the defendant viewed them as lewd.
Trial Court: That is a misstatement. It’s just—the jury determines if they’re lewd.
Prosecutor: I would ask that the jury be instructed to disregard that last statement.
Trial Court: You are instructed to disregard. The instructions are what they are and they tell you that you determine if they’re lewd photographs.
B. Standard of Review
The trial court’s ruling on the State’s objection to a defendant’s jury argument is reviewed for abuse of discretion. Davis v. State, 329 S.W.3d 798, 825 (Tex.Crim.App.2010). “Although the trial court has broad discretion in controlling the scope of closing argument, it may not prevent defense counsel from making a point essential to the defense.” Lemos v. State, 130 S.W.3d 888, 892 (Tex.App.—El Paso 2004, no pet.). The defense has the legal right to argue any theory supported by the evidence. Brown v. State, 955 S.W.2d 276, 279 (Tex.Crim.App.1997); Lemos, 130 S.W.3d at 892. Prohibiting counsel from making a particular jury argument is a denial of the defendant’s right to counsel when that argument is one the defendant is entitled to make. McGee v. State, 774 S.W.2d 229, 238 (Tex.Crim.App.1989), cert. denied, 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990); Lemos, 130 S.W.3d at 892. Only when the trial court restricts the defense counsel from doing something it had the legal right to do, however, is it considered a deprivation of counsel. Jackson v. State, 992 S.W.2d 469, 476 (Tex.Crim.App.1999); Lemos, 130 S.W.3d at 892.
C. Analysis
A person commits the offense of possession of child pornography if “(1) the person knowingly or intentionally possesses visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct, ...; and (2) the person knows that the material depicts the child as described by Subdivision (1).” Tex. Penal Code Ann. § 43.26(a). The Penal Code defines “sexual conduct” as “sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-maso- *693 chistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola.” Id. § 43.25(a)(2).
The jury was instructed under each count that it must find appellant did “intentionally or knowingly possess visual material that visually depicted, and which the [appellant] knew visually depicted a child ... engaging in sexual conduct ... which depicts lewd exhibition of the genitals or female breast below the top of the areola[.]” Therefore, the jury was required, under each count, to make a determination regarding the lewdness of the photographs. The term “lewd” has a common meaning that jurors can be fairly presumed to know and apply. Tovar v. State, 165 S.W.3d 785, 790 (Tex.App.—San Antonio 2005, no pet.). Because the term “lewd” is not defined by statute, it need not be defined in the jury charge. See id.
Contrary to his assertion on appeal, Ar-teaga was not prohibited from arguing to the jury that others might not consider the photographs of Doe to be lewd. Arteaga’s counsel argued, without objection, that “yes, to a stranger those photos are lewd, but nurses and doctors—and you are going to see these photos, and I’ve seen these photos, and as a father and as a lawyer in this case, I don’t view them as lewd.” The State objected specifically to Arteaga’s counsel’s argument that the jury “[had] to make a decision whether or not when my client looked at [the photographs] he was viewing them as lewd.” The trial court’s instruction was not improper.
Arteaga was allowed to argue and present evidence that others, including appellant, might not view the photographs as lewd. Specifically, Arteaga testified, without objection, that he did not consider the photographs to be child pornography. The argument the jury was instructed to disregard went a step further—informing the jury that the jury’s consideration of lewdness was limited to whether appellant viewed the photographs as lewd. The trial court correctly instructed that it was within the jury’s province to decide whether the photographs were lewd. See id. at 792 (holding an appeal from conviction for possession and promotion of child pornography that the defendant was not entitled to instruction that “whether the content of a photograph constitutes a lewd or lascivious exhibition of a child’s genitals depends on the intent of the photographer”). We also note the jury charge tracked the language of the pertinent statutes and properly placed the burden on the State to prove appellant’s mens rea as required by those statutes. See id.
The trial court’s ruling and instruction were not an abuse of discretion. Arteaga’s second issue is overruled.
III. Conclusion
We affirm the trial court’s judgments.

. Pursuant to a docket-equalization order issued by the Texas Supreme Court, the two appeals were transferred to this Court from the Third Court of Appeals in Austin, Texas. See Tex. Gov’t Code Ann. § 73.001 (West, Westlaw through 2015 R.S.). Appellate Cause No. 13-13-00612-CR is the appeal from trial court cause number 40517. Appellate Cause No. 13-13-00613-CR is the appeal from the trial court cause number 40138.

. Arteaga’s two indictments were tried during a consolidated trial. See Tex. Penal Code Ann. § 3.02 (West, Westlaw through 2015 R.S.). Our analysis allows us to consider them together one opinion.

. The victim was identified in the indictment and at trial by the pseudonym, “HSB Doe.”

. The State had originally charged Arteaga with twenty-three counts of possession of child pornography, but abandoned six of the counts prior to submitting the charge to the jury. See Tex. Penal Code Ann. § 43.26.

. Of the five children in the home, only Doe had her own bedroom. The other children shared bedrooms across the house from Ar-teaga and Doe,

. Arteaga’s trial consisted of both of his cases simultaneously. There were two separate jury charges given by the trial court. This issue deals solely with the charge for the sexual assault case.

. Although the dissent states that § 22.011(f) would require Arteaga to be prohibited from marrying Doe because either Doe or Arteaga are married, this is irrelevant. Doe was a fourteen year-old child at the time of her outcry and would be legally unable to marry based on her age. See Tex. Family Code Ann. §§ 2.101,2.102. Therefore, it is not a point that needs to be further considered.

. In Price, the Texas Court of Criminal Appeals made modifications to the continuous sexual assault of a child statute. See Price, 434 S.W.3d 601 (Tex.Crim.App.2014); see also Tex. Penal Code Ann. § 21.02 (West, West-law though 2015 R.S.). The court determined that the Legislature could not have intended that attempt offenses were not included in the list of sexual crimes that could fit under the continuous sexual assault statute. See id. It was an event that had not been anticipated, and the court made the proper modifications through case law. We believe the same situation exists here as the Legislature could not have intended the outcome Arteaga is suggesting.

. There is little other analysis or legislative history regarding this particular section of HB 3006 or its later addition to SB 6.

. Section 25.02 also uses a definition to describe consanguinity without any reference to the Texas Family Code. See Texas Penal Code Ann. § 25.02.