PD-0483-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/11/2015 2:34:00 AM
Accepted 11/13/2015 10:12:20 AM
ABEL ACOSTA
CLERK

**No. PD-0483-15**

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

**RUBEN TOTTEN**
*Appellant*

v.

**THE STATE OF TEXAS,**
*Appellee*

---

## Appellant's Brief on the Merits

---

From the First Court of Appeals, No. 01-14-00189-CR
Reversing the judgment in Cause No. 1365961
From the 228th District Court of Harris County, Texas.

---

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**SARAH V. WOOD**
Assistant Public Defender
Harris County, Texas
Texas Bar Number 24048898
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
Sarah.Wood@pdo.hctx.net

**Counsel for Appellant**

# TABLE OF CONTENTS

Table of Contents ........................................................................................................2

Index of Authorities ...................................................................................................3

Statement of the Case ................................................................................................4

Statement of Facts .....................................................................................................4

Summary of the Argument .........................................................................................4

Argument ....................................................................................................................7

    Response to State's First Issue for Review: ........................................................7

        "This case should be remanded because an error in the record invalidates the basis for the appeal."..................................................................................

    Response to State's Second Issue for Review: ................................................12

        "Is the possibility that an officer detained the wrong vehicle, without more, determinative of the lawfulness of a detention such that an article 38.23 instruction is required?"............................................................

    Response to State's Third Issue for Review: ...................................................15

        "Is an appellant who identifies no disputed fact issue at trial but raises multiple issues on appeal entitled to the 'some harm' standard for preserved charge error?" ..............................................................................

    Response to State's Fourth Issue for Review:..................................................18

        "Should the harm analysis for the failure to give an article 38.23 instruction assume the jury would have found in the defendant's favor, or is that the point of the analysis?"...............................................................

Prayer .......................................................................................................................21

Certificate of Service and Compliance ...................................................................21

# INDEX OF AUTHORITIES

**Cases**

*Bishop v. State*, 85 S.W.3d 819 (Tex. Crim. App. 2002). ..................................................................12

*Chapman v. State*, 921 S.W.2d 694 (Tex. Crim. App. 1996) ..........................................................17

*Chase v. State*, 448 S.W.3d 6 (Tex. Crim. App. 2014). ....................................................................17

*Francis v. State*, 36 S.W.3d 121 (Tex. Crim. App. 2000) ................................................................16

*Madden v. State*, 242 S.W.3d 504 (Tex. Crim. App. 2007 ...............................................................14

*Reeves v. State,* 420 S.W.3d 812 (Tex. Crim. App. 2013)................................................................21

*Robinson v. State*, 377 S.W.3d 712 (Tex. Crim. App. 2012) ..........................................................13

*Rouse v. State*, 300 S.W.3d 754 (Tex. Crim. App. 2009). ...............................................................11

*State v. Rosseau*, 396 S.W.3d 550 (Tex. Crim. App. 2013). ...........................................................18

*Stone v. State*, 703 S.W.2d 652 (Tex. Crim. App. 1986). .................................................................16

*Thomas v. State*, 408 S.W.3d 877 (Tex. Crim. App. 2013). ............................................................16

*Totten v. State*, 01-14-00189-CR, 2015 WL 1501799 (Tex. App.—Houston [1st Dist.] Mar. 31, 2015), petition for discretionary review granted (Aug. 26, 2015) ..............................................4

**Statutes**

Tex. R. App. P. 34.6(e)..........................................................................................................................7

Tex. R. App. P. 66.4. .............................................................................................................................9

**Treatises**

43 Tex. Prac., Criminal Practice And Procedure § 44:48 (3d ed.)................................................19

43B Tex. Prac., Criminal Practice And Procedure § 55:62 (3d ed.)............................................11

## STATEMENT OF THE CASE

Mr. Totten was found guilty of possession of 1.2 grams of cocaine and sentenced to 25 years in prison. (C.R. at 100; 4 R.R. at 45). On appeal, Chief Justice Sherry Radack found the trial court erred in refusing to provide a 38.23 instruction to the jury and the First Court of Appeals remanded for a new trial in an unpublished memorandum opinion. *Totten v. State*, 01-14-00189-CR, 2015 WL 1501799 (Tex. App.—Houston [1st Dist.] Mar. 31, 2015), petition for discretionary review granted (Aug. 26, 2015). The State Prosecuting Attorney filed a petition for discretionary review which was granted by this Court.

## STATEMENT OF FACTS

The appellant would ask this Court to defer to the facts as stated by the court of appeals.

## SUMMARY OF THE ARGUMENT

First, the State's request to amend the reporter's record should be denied. The plain language of Rule 34.6(e)(3) contemplates that such matters must be submitted to "that" court that first hears the appeal and in which the record is officially "filed." Under the interpretation proposed by this Court in *Routier*, the rule is also inapplicable because the "dispute" technically arose **before** the record was "filed" in this Court, whereas 34.6(e)(3) speaks of disputes arising after the record is filed.

4

It is also questionable as to whether records are officially "filed" in this Court on PDR or whether they are just temporarily "received" since they are later returned to the court of appeals.

Either way, even the State appears to concede that 34.6(e)(3) does not apply to this case. The State therefore asks this Court to take the rare step of suspending the operation of the rules and simply amend the record itself. However, the State fails to offer any extenuating circumstances for this request coming over 18 months after the record was filed.

The State also cites no authority for this Court to consider the affidavit that is attached to its brief. The affidavit was never filed in any court by the reporter and was only given directly to the SPA and thus it is merely a witness statement submitted on behalf of a party rather than any official act of the court reporter. Because it was never admitted into evidence, it should not be considered on appeal.

The State also argues that the evidence is insufficient to require a 38.23 charge because evidence was not developed to show the reasonableness of the officer's actions in detaining the appellant. However, it is the State's burden to present evidence of reasonableness. That does not affect the appropriateness of a 38.23 charge. Also, evidence was submitted about the reasonableness of the officer's belief that they pulled over the correct vehicle; it is of no moment that the State now feels the showing was somehow inadequate.

Furthermore, the State contends that requesting a 38.23 instruction is insufficient to preserve a defendant's request for a 38.23 instruction. However, the omission in the charge was preserved in this case by a simple, specific, and repeated objection that accurately stated the law. The entire thrust of the defense at trial was focused on the legality of the detention so that the basis should have been clear to anyone who paid attention to the proceedings. Trial judge Brian Rains made his adverse rulings forcefully and without hesitation, precluding further discussion and indicating that he had no problem understanding the objections.

In arguing that the court of appeals erred in its harm analysis, the State further contends that the record is inaccurate. The State says that Trant's comment that the wrong vehicle was detained was so incongruent with the rest of the evidence as to be unbelievable. However, it actually fits quite well. Trant testified that he was not sure whether the people he observed were the same people who were detained. Nothing in the evidence precludes the jury's consideration of the "wrong vehicle" testimony.

**Response to State's First Issue for Review:**

**"This case should be remanded because an error in the record invalidates the basis for the appeal."**

In its PDR, the State argued that "the proper remedy is to remand the case to the court of appeals so that it may submit the issue to the trial court for resolution." (State's PDR at 5). Indeed, the language of 34.6(e)(3) appears to contemplate the intermediate court of appeals (or whatever court first hears the appeal) as the appropriate authority to remand to the trial court. Rule 34.6(e)(3) states:

(e) Inaccuracies in the Reporter's Record.

   (3) Correction After Filing in Appellate Court. If the dispute arises after the reporter's record has been filed in the appellate court, **that** court may submit the dispute to the trial court for resolution. The trial court must then proceed as under subparagraph (e)(2).

Tex. R. App. P. 34.6(e) (emphasis added).

In its brief, however, the State now appears to argue that this Court should amend the record itself based on the affidavit attached to the State's brief, rather than either remanding to the lower courts or denying the request outright.. The State cites *Routier v. State* for this proposition. *Routier v. State*, 112 S.W.3d 554, 573 (Tex. Crim. App. 2003) (State's brief at 8).

*Routier* was a direct appeal to this Court in a death penalty case. *Id.* at 557. After the reporter's record was filed in this Court, the appellant filed a motion to correct the record and this Court submitted the issue to the trial court for further proceedings. *Id.* When a corrected record was later filed as a result of the trial court hearing, the appellant again moved to correct further alleged inaccuracies and this Court denied the request. *Id.* at 573.

This Court noted, as the State correctly points out, that the language of Rule 34.6(e)(3) is permissive, stating, "[T]hat [appellate] court **may** submit the dispute to the trial court for resolution." The State contends that the opinion in *Routier* "implies" that an appellate court may therefore "resolve the dispute itself," rather than remanding to the trial court. (State's brief at 8). However, in *Routier*, this Court did not consider amending the record itself, it simply took the permissive language in 34.6 to mean that it could **deny** the request to correct the record.

*Routier* went on to explain that under the circumstances, Rule 34.6(e)(3) was not even applicable because the appellant wanted to amend the corrected record, which was actually filed **after** the dispute arose. Rule 34.6(e)(3) only applies "[i]f the dispute arises after the reporter's record has been filed in the appellate court." Therefore, since the dispute as to the record technically arose before the corrected record was filed, relief was foreclosed under 34.6(e)(3). *Routier*, 112 S.W.3d at 573.

Likewise, in this case the dispute arose in the State's PDR—before the record was "filed" in this Court. The State appears to concede that, for this reason, Rule

34.6(e)(3) does not apply, and so it asks this Court to "suspend the rule's operation" on its behalf. (State's brief at 9).

Interestingly, it is questionable as to whether the reporter's record is ever technically "filed" with this Court on a PDR. Rule 66.4 requires "the court of appeals clerk to promptly **send**…the appellate record." Tex. R. App. P. 66.4 (emphasis added). The record is deemed "received" on this Court's docket notation and the record is later returned to the court of appeals. Tex. R. App. P. 69.4. This is more indication that Rule 34.6(e)(3) refers to "that" appellate court that first hears a case and where the record is officially "filed" by the reporter. Indeed this appeared to be the State's initial impression when writing its PDR. It would indeed seem that the rules would need to be bent to serve the State in this instance.

Asking for this Court to suspend the rules, the State argues that it would be "absurd" not to allow amendment of the record and that such a position would encourage "willful ignorance or gamesmanship." (State's brief at 8-9). However, it seems more likely that permitting litigation as to the accuracy of the record at this late date could serve to discourage diligence.[1] The State in this case fails to note any extenuating circumstance to explain why the court of appeals was never asked to oversee this dispute.

---

[1] As an aside, counsel—as a frequent litigant in these stressful matters—would feel personally comforted to know that she could always move this Court to amend the record even after losing an appeal.

In *Routier*, this Court further justified its denial of the appellant's motion to correct the record, explaining, "Even if we were to assume that the [corrected] record was a new record that had not been filed in this Court prior to discovery of the inaccuracies, the appellant had three opportunities to [ensure the record's accuracy at earlier times]." *Routier*, 112 S.W.3d at 573. This Court opined, "The appellant had over six months to review the first installment of the [corrected record]… When the second installment was delivered, the appellant had another opportunity…Then the appellant had another three months to review [the record]." *Id.*

In this case, the State had 18 months to consider the accuracy of the record between the time it was filed and the date the opinion was issued. The court of appeals noted that even in its brief, "[t]he State does not respond directly to appellant's argument that the evidence raised a material fact question as to whether the failure to signal a turn and the later traffic stop involved the same vehicle." *Totten*, at *2. Moreover, the State failed to file a motion for rehearing in the court of appeals raising this issue once the case was decided against it. The original prosecuting office of the Harris County District Attorney still has never disputed the accuracy of the record.

Even now, the affidavit of the court reporter has not been filed directly with any court. According to the stamp on its face, it was only given directly to the State Prosecuting Attorney who then attached it to its brief. The posture of the affidavit thus purports to be a witness-statement rather than an actual correction or amendment of

the record.[2] The submission of the affidavit is an act of counsel on behalf of a party to the case—not an official act of a neutral court reporter.

As Professors Dix and Schmolesky note, "It is clear that informal efforts to put material not in the record before an appellate court are neither proper nor effective. Thus, the material that the appellate court may consider is not increased by attaching an affidavit to the appellate brief…" 43B Tex. Prac., Criminal Practice And Procedure § 55:62 (3d ed.).

In refusing to consider an affidavit attached to a motion for new trial, this Court held that "post-trial motions such as these are not self-proving and any allegations made in support of them by way of affidavit or otherwise must be offered into evidence at a hearing." *Rouse v. State*, 300 S.W.3d 754, 762 (Tex. Crim. App. 2009). Likewise, the reporter's affidavit in this case is not "self-proving." It has not been admitted into evidence and is in conflict with the reporter's previous sworn certification that the original record was correct in March of 2014.

The State makes its request too late and in an improper procedural form. It cites no authority for this Court to either consider its affidavit or to amend the record at this stage of the proceedings.

---

[2] According to the Uniform Format Manual for Texas Reporters' Records, "In the event of a flagrant violation of the requirements in the manual, on motion of a party or on the court's own initiative, the appellate court or presiding judge may require the court reporter or court recorder to amend or prepare a new record in proper form — and provide it to any party who has been provided a copy of the defective record— at the preparer's expense." P. 2.

**Response to State's Second Issue for Review:**

**"Is the possibility that an officer detained the wrong vehicle, without more, determinative of the lawfulness of a detention such that an article 38.23 instruction is required?"**

The State complains that the court of appeals was incorrect in requiring a 38.23 instruction because "the record was not developed to enable the jury's consideration of reasonableness [of the stop]." (State's brief at 11). The States opines, "No one at trial developed a record of what the 'wrong' vehicle looked like…" (State's brief at 12).

However, the burden is on the State to demonstrate the reasonableness of a traffic stop. *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002). The State cites no cases suggesting that the appropriateness of a 38.23 instruction depends upon how much evidence the State developed at trial to support the reasonableness of a mistake of historical fact.

The State cites to *Robinson v. State* which held that a 38.23 instruction was improper where a dispute arose as to whether a turn signal was required at a particular intersection because that was a question of law for the judge. This Court drew an important distinction, effectively supporting the instruction in this case, stating:

> This is not to say that a police officer's reasonable mistake of historical fact can never be the legitimate subject of an Article 38.23(a) instruction. A police officer's reasonable mistake about the facts may yet legitimately justify his own conclusion that there is probable cause to arrest or reasonable suspicion to detain. This is so because a mistake about the

facts, if reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be. And if there is a dispute about whether a police officer was genuinely mistaken, or was not telling the truth, about a material historical fact upon which his assertion of probable cause or reasonable suspicion hinges, **an instruction under Article 38.23(a) would certainly be appropriate.**

*Robinson v. State*, 377 S.W.3d 712, 720-21 (Tex. Crim. App. 2012) (emphasis added).

The State does not argue that the record raises no dispute as to whether reasonable suspicion existed to detain the "wrong vehicle;" it only argues that the State did not present much evidence of the reasonableness of the mistake.

However, the prosecutor did elicit testimony that the arresting officer, Kunkel, pulled over the vehicle based on Trant's description that it was a "green Ford Ranger" in the same vicinity (3 R.R. at 59). The jury also heard testimony that Kunkel did not base his decision on a license plate number and that the vehicle had a broken tail-light but that was never mentioned in the description. (3 R.R. at 59-60). Based on this evidence, the jury could have found it was a reasonable mistake—or an unreasonable mistake— "about a material historical fact upon which his assertion of…reasonable suspicion hinges." *Robinson*, 377 S.W.3d at 720-21.

As the court of appeals pointed out, this Court has held that in a similar situation, there "must be some affirmative evidence of 'did not speed' in the record before there is a disputed fact issue." *Totten*, at *4 (quoting *Madden v. State*, 242 S.W.3d 504, 513–14

(Tex. Crim. App. 2007)). The State does not argue that in this case there was no affirmative evidence of "did not fail to signal," only that the trial prosecutor did not establish the reasonableness of a potentially erroneous stop to its satisfaction. The opinion of the court of appeals in this case comports with the law.

Also pertinent to this issue is the fact that the court of appeals remarked that "Appellant also claims that photographic evidence of the scene raises a fact issue about whether Trant could have seen the vehicle turn without signaling." *Totten*, at *2. However, the court never reached this argument because the "wrong vehicle" issue was dispositive to the appeal.

The State indicates in its brief that if this Court remands the case to the court of appeals, that court may have to address the claim about the photographic evidence. (State's brief at 14, n. 53). It is worth noting that this additional evidence would also require a 38.23 instruction.

Trial counsel introduced seven different photos of the area to aid the jury's determination as to whether Trant was in a position to have seen the alleged failure to signal. (Defense exhibits 1—7). Additionally, Trant admitted during cross-examination that he could not see the vehicle during the turn in question: "While turning, they go out of my view, yes, sir." (3 R.R. at 44).

The evidence is plainly sufficient to require a 38.23 instruction, as the court of appeals held and even if remanded, the court could reach the same result on the issue of the turn signal that it did not reach.

**Response to State's Third Issue for Review:**

> **"Is an appellant who identifies no disputed fact issue at trial but raises multiple issues on appeal entitled to the 'some harm' standard for preserved charge error?"**

The State argues that trial counsel's repeated requests for "a 38.23 instruction" failed to preserve his objection to the lack of a 38.23 instruction. (3 R.R. at 95; 4 R.R. at 3) (State's brief at 13-14). It was no secret that counsel took pains in this case to obtain a 38.23 instruction. From the first moments of opening argument, the basis of the defense was clear: "Not legally, not justifiably, pulled this car over. And it's their word that these traffic violations were committed when, in fact, they weren't." (3 R.R. at 7).

"Rather than focus on the presence of magic language, a court should examine the record to determine whether the trial court understood the basis of a defendant's request." *State v. Rosseau*, 396 S.W.3d 550, 555 (Tex. Crim. App. 2013). "[A] party need not state his objection with specificity in order to preserve error so long as the record otherwise makes it clear that both the trial court and the opposing party understood the legal basis." *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013).

There is nothing obscure about a request for a 38.23 instruction; indeed, it is common parlance. Counsel twice pointed out the statutory provision on which he relied and obtained adverse rulings that were so immediate and so reflexive as to prevent any

15

further discussion. Judge Brian Rains made it clear that he had no desire to hear argument on the matter. (3 R.R. at 95; 4 R.R. at 3).

In *Francis v. State*, this Court discussed with approval the holding in *Stone v. State* where a defendant's request for a 38.23 instruction was deemed sufficient even though it specified erroneous language and misstated the law. *Francis v. State*, 36 S.W.3d 121, 123 (Tex. Crim. App. 2000); *Stone v. State*, 703 S.W.2d 652, 654 (Tex. Crim. App. 1986). This Court held in *Stone* that since the trial court understood that appellant was objecting to the omission of an instruction regarding the officer's right to stop a vehicle, it was sufficiently "apprised of appellant's objection to omissions in the charge." *Stone*, 703 S.W.2d at 654. All that was necessary was for the request to "be sufficient to call the trial court's attention to the omission in the court's charge." *Id.* at 655.

In *Chapman v. State*, counsel said little more than "I want a charge on 38.23" and this Court held that it was sufficient. *Chapman v. State*, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996). "This is all that is required to preserve error, if any." *Id.*

In support of its argument, the State relies in part on *Madden v. State* in which the objection was insufficient because "when the trial judge asked appellant to tell her precisely what facts he thought were in dispute, he focused primarily on the question of appellant's nervousness…" *Madden v. State*, 242 S.W.3d 504, 512 (Tex. Crim. App. 2007). This Court observed, "Looking just at appellant's requested jury instruction, neither the trial judge, the court of appeals, nor ourselves could have any idea of what specific fact or facts appellant believed were in dispute." *Id.* at 511-12. While it was clear

16

that the trial court in *Madden* was struggling to understand the misguided request, Judge Rains made it clear he had no problems understanding.

The State additionally cites to a footnote in *Holmes v. State* where this Court in dicta noted that the defendant's 38.23 request was deficient because counsel submitted an erroneous special charge. *Holmes v. State*, 248 S.W.3d 194, 202 (Tex. Crim. App. 2008). However, the import of the footnote was never developed in the opinion and at any rate can be distinguished by the more recent case of *Chase v. State*. In *Chase*, this Court made clear that two methods exist in order to object to a jury charge, holding that "error in the jury charge may be preserved by objection or by submitting a proposed instruction." *Chase v. State*, 448 S.W.3d 6, 12 (Tex. Crim. App. 2014). Whereas the method of preservation in *Holmes* was by submitting an (erroneous) proposed charge, counsel in this case elected to make an objection. "Defense counsel has the option to use either method of error preservation." *Id.*

A simple, accurate, and repeated objection that the trial judge forcefully indicated he understood is sufficient to preserve error in this case.

**Response to State's Fourth Issue for Review:**

**"Should the harm analysis for the failure to give an article 38.23 instruction assume the jury would have found in the defendant's favor, or is that the point of the analysis?"**

The State appears to misconstrue the harm analysis in this case as the court of appeals never "assume[d] the jury would have found in the defendant's favor." Harm is not determined from an assumption that the defendant would have won the trial; rather, it stems from the lost **opportunity** to do so. As the court of appeals correctly points out, an accused is entitled to an instruction regardless as to whether the evidence is "strong, weak, contradicted, unimpeached, or unbelievable." *Totten*, at *2. The jury is the arbiter of the facts and may have a distinctly different perspective than those reading the cold record on appeal—or even than the lawyers arguing the case in court.

As Professors Dix and Schmolesky point out, "the appellate courts are inclined to find harm from defendants' inability to have juries pass on their contentions. More specifically, they appear reluctant to find that defendants' contentions, although sufficient to warrant submission, are so weakly supported as to render their likelihood of success too low to give rise to harm." 43 Tex. Prac., Criminal Practice And Procedure § 44:48 (3d ed.).

The State focuses on its contention that the "wrong vehicle" dispute is, in its opinion, unbelievable, saying "it is noteworthy that Trant's 'admission' did not even draw a comment." (State's brief at 15). But it is likewise noteworthy that it also did not

even draw a comment in the State's original brief in the court of appeals. *See Totten*, at *2 ("The State does not respond directly to appellant's argument that the evidence raised a material fact question as to whether the failure to signal a turn and the later traffic stop involved the same vehicle."). Even though the attorneys' reactions did not meet the State's expectations, that does not mean that the evidence went unheard by the judge and jurors.[3] Likewise, even though the State's original brief failed to react to appellate counsel's argument, that does not mean it was never made.

The State's remaining factual contentions supporting its harm analysis are incorrect. The State insists that the "wrong vehicle" testimony was so inconsistent with the rest of the evidence as to be unbelievable.

Contrary to the State's assertion, it was not "undisputed that Trant saw appellant in the green Ford Ranger before it stopped at the duplex…" (State's brief at 16). Indeed, if the evidence had been undisputed that Trant specifically knew for sure that the appellant was in the car that failed to signal, it would be nonsensical to argue officers stopped the wrong car. However, Trant testified he could not see the people in the car.

> Prosecutor: Do you know if the person they pulled over is the same person that you saw?
>
> Trant: When they went by - - I mean, I could just see two occupants. It was kind of a blur.

---

[3] Because counsel has no personal knowledge as to the accuracy of the record and the State's affidavit is not self-proving, this brief is written based on the contents of the official record.

(3 R.R. at 17).

Trant thus conceded that he was not sure who was in the car that he allegedly saw fail to signal. He could not say whether it was the same men who were later pulled over by Kunkel.

It is noteworthy that this excerpt from the testimony is the same that is reprinted in the court of appeals' opinion. *Totten*, at *3. In fact, this testimony occurred in the same breathe as Trant conceding that it "wasn't the same vehicle." This is all entirely consistent with Trant expressing doubt that the correct car was pulled over.

The State also correctly asserts that it was "undisputed that Trant spoke to appellant after the arrest…" (State's brief at 16). However, this is irrelevant since no one disputed that the appellant was the person who was arrested.

Moreover, Trant also conceded that he could not really see or identify the vehicle's occupants when he surveilled the allegedly suspicious activity. He testified that from his vantage point, he saw that "there's a black and white male. I could tell that." (3 R.R. at 36).

Contrary to the State's argument, the evidence is cohesive with Trant's remark that it "wasn't the same vehicle" since he also testified he couldn't be sure if it wasn't the same people.

The jury should have had the opportunity to consider whether the evidence was illegally obtained. In one of the cases cited by the State, this Court's harm analysis focused on the fact that "the erroneous instruction…undermined appellant's sole

defense." *Reeves v. State,* 420 S.W.3d 812, 820-21 (Tex. Crim. App. 2013). The legality of the stop was the sole defense in this case. The opinion of the court of appeals is sound and should not be undermined based on arguments that were never presented to it.

## PRAYER

FOR THESE REASONS, the Appellant respectfully prays that this Honorable Court affirm the opinion of the court of appeals.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

**/s/ Sarah V. Wood**
**SARAH V. WOOD**
Assistant Public Defender
Harris County Texas
1201 Franklin, 13th Floor
Houston Texas 77002
(713) 368-0016 (phone)
(713) 368-9278 (fax)
State Bar Number 24048898

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that this filing has 4,407 words and that a copy of the foregoing reply to the State's petition for discretionary review has been served on the District Attorney of Harris County, Texas, by the efile service and to the State Prosecuting Attorney.

**/s/ Sarah V. Wood**
**SARAH V. WOOD**